# Commonwealth *v.* Hall, Appellant.

*Criminal law—Forgery—Indictment—Evidence.*

Where a defendant is charged with the unlawful, false and fraudulent uttering and publishing of a written instrument, with the intent, etc., the failure to charge a scienter deprives him of no legal right. Of course he cannot be convicted of uttering and publishing without proving his guilty knowledge.

Where an indictment for forgery charges the making of a note on a certain day, and a true bill is found within less than one year from the date charged, and a copy of the note appearing in the indictment gives the date as of a day more than five years prior to the date of the indictment, the court cannot give binding instructions that the prosecution is barred by the statute of limitations. In such a case it is proper to submit the indictment to the jury, and to charge that defendant cannot be convicted unless the jury are satisfied beyond a reasonable doubt that he made or caused the note to be made within five years of the finding of the bill.

On the trial of an indictment for forgery there is sufficient evidence to warrant the jury in finding that there was a forged note in the possession of the defendant, where it appears that the defendant had brought a civil action and filed a copy of the note therein which was similar to the one set out in the indictment, and a large number of witnesses testify to seeing the note, and to declarations of the defendant that he had such a note.

Argued March 8, 1904. Appeal, No. 18, Feb. T., 1904, by defendant, from judgment of Q. S. Tioga Co., Sept. T., 1902, No. 4, on verdict of guilty in case of Commonwealth v. John M. Hall. Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ. Affirmed.

Indictment for forgery. Before Ormerod, P. J.

See Commonwealth v. Hall, 23 Pa. Superior Ct. 104.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were various instructions.

*David Cameron*, with him *J. W. Mather*, for appellant.

*F. S. Channell*, with him *F. H. Rockwell*, district attorney, *F. E. Watrous* and *H. F. Marsh*, for appellee.

Opinion by Morrison, J., April 18, 1904:

The defendant, John M. Hall, was tried and convicted of

the crime of forgery, and sentenced to pay a fine and undergo imprisonment in the Eastern Penitentiary, and thereupon he appealed to this court. He was tried on the same indictment which was before us in Commonwealth v. Hall, 23 Pa. Superior Ct. 104. We there held the indictment sufficient and that under it a defendant might be convicted of the fraudulent making, signing, uttering and publishing a written instrument with intent, etc., if the acts charged constituted one transaction, notwithstanding the fact that the fraudulent making or causing to be made and the uttering and publishing were all charged in an indictment containing a single count. We further held that on such an indictment, if the evidence failed to show the fraudulent making and uttering and publishing as a single transaction, it would be error to permit a jury to find the defendant guilty in manner and form as indicted. In such case we said the defendant might be convicted of the fraudulent making or causing to be made, or if the jury was not satisfied beyond a reasonable doubt of his guilt in that respect, but were satisfied he knew the note or writing was a forgery and uttered and published it, he might be convicted of the uttering and publishing. We think what was said in our former consideration of this case is sufficient to justify the submission of the guilt or innocence of the defendant under the indictment as to all that was charged therein. But the evidence did not show that the fraudulent making of the note or causing it to be made, and the uttering and publishing was one transaction. It is quite clear under the evidence that the note was not made and uttered and published at the same time and place. An examination of the charge of the learned judge shows that he carefully guarded the rights of the defendant in this respect. In short, he carefully followed our ruling when the case was here before. The result was a verdict of guilty as to the fraudulent making or causing to be made, or in other words, of forgery.

The defendant not having been found guilty of uttering and publishing, it does not seem necessary to discuss the question of whether or not it was necessary to allege a scienter. But in passing we say that it is not necessary. Where a defendant is charged with the unlawful, false and fraudulent uttering and publishing of a written instrument, with the intent, etc., the

failure to charge a scienter deprives him of no legal right.    Of course he cannot be convicted of uttering and publishing without proving his guilty knowledge.    " Every indictment shall be deemed and adjudged sufficient and good in law, which charges the crime substantially in the language of the act of assembly prohibiting the crime, and prescribing the punishment, if any such there be, or, if at common law, so plainly that the nature of the offense charged may be easily understood by the jury : "    Section 11, criminal procedure Act of March 31, 1860, P. L. 427.

In this case it would have been better pleading to have charged the defendant in one count with the fraudulent making or causing to be made, etc., and in another count with the fraudulent uttering and publishing, and if this had been done it is very probable the verdict would have been guilty on both counts.    When the evidence showed that the fraudulent making or causing to be made, and the uttering and publishing did not constitute one transaction, it became necessary for the learned court to instruct the jury that the defendant could only be convicted of one of the offenses charged in this count.    This was done carefully and the rights of the defendant properly guarded.

It is contended that the court ought to have instructed the jury that the prosecution was barred by the statute of limitations.    The indictment charges the defendant with the fraudulent making, etc., on November 13, 1901, and a true bill was found on September 24, 1902, less than one year from the date charged in the indictment as the time when the crime was committed.    The copy of the note appearing in the indictment gives the date of it as September 10, 1872.    The argument is that because there was no positive evidence of the date when the note was made, and its date being more than five years prior to the finding of the indictment, therefore, the statute of limitations had run and the court was bound to give a binding instruction on this point.    To us it hardly seems necessary to consider this proposition seriously.    The effect of such a rule is to say that if a man forges a writing and is smart enough to date it more than five years prior to the time when he actually made it, and the commonwealth is unable to prove by direct testimony when the note actually was made, then the

defendant must be acquitted because the note on its face shows
it was made more than five years before the finding of the bill.
Yet, in truth, the note might have been made thirty days more
or less prior to the finding of the bill. The indictment charged
the making of the note within the statutory period, and the
learned court carefully charged the jury that the defendant
could not be convicted unless they were satisfied beyond a rea-
sonable doubt that he made or caused the note to be made
within five years of the finding of the bill. The verdict in-
dicates the jury's finding that the claim was not barred by the
statute of limitations, and we cannot say that there was not
sufficient evidence and circumstances before the jury from
which they could so find.

It is further contended that there was not sufficient evidence
to warrant the jury in finding that there was a forged note
in the possession of the defendant purporting to have been
made and signed by John Benson, Sr. And there was not
sufficient evidence of the uttering and publishing of such a
note. We have carefully examined the evidence and can-
not agree with this contention. We will here refer to the
names of some of the witnesses and the substance of their
testimony upon this point. 1. It should be noted that the
defendant brought a civil action and filed a copy of a note
therein, which is similar to the one set out in the indictment.
This record was in evidence and it was proper for the con-
sideration of the jury. 2. There was the testimony of H.
L. Rockwell, the son-in-law of John Benson, Sr., that he was
intimately acquainted with Benson in his lifetime, that he was
shown a paper marked " Commonwealth's Exhibit C," to wit:
" note given by John Benson, Jr., to John M. Hall for $1,082.30,
Sept. 10, 1872, due in ten years. Interest to be paid yearly.
Amount due Sept. 10, 1901, $5,864.32." Mr. Rockwell said,
the defendant Hall wanted to know if my wife was at home,
and he told me to hand this statement to her. "Here is a
demand for this amount of money that is owing me." Mr.
Rockwell also testified: Mr. Mather showed me the note in the
office of Watrous, Marsh and Channel, and I looked the note
over. It was sometime in January, 1901, after Mr. Benson's
death. He describes it as a note written in a book and says
he put a glass on it, and describes the size of the book and its

appearance. Said it was written on one leaf. All written with pen and ink. Said the note was given to John M. Hall by John Benson, Jr., for $1,082.30 and dated September 10, 1872, payable ten years after date, interest to be paid annually. Mr. Rockwell also testified that John Benson could only write his name, and that he was quite familiar with his signature, and that the signature to the note was not that of John Benson.

Lyman Benson, a witness for the commonwealth, testified that he knew John Benson in his lifetime, and knew John M. Hall and had a conversation with Hall in reference to a note which he had against the Benson estate. This was after Benson's death. Mr. Hall said he wrote the note and said he asked John if he could not write his name any better, and said that John said he couldn't because it was so near the bottom of the page. Said Hall told him how much it was and how he got it; said it was over a thousand dollars at the time it was given.

Elmer Perry also testified that the defendant showed him a note. It was a written note, written in a kind of an account book. He told me it was a blacksmith book about seven or eight inches square.

William Rarick, for the commonwealth, testified that Mr. Hall showed him a book saying he had a note in it against John Benson, but he did not read it—a little small account book.

G. B. Hubbard, another witness for the commonwealth, testified to a conversation with defendant Hall about the note, which he said he had against the estate of John Benson. This was after the death of Benson. Said we were talking about the store there and he took a paper out of his pocket, and he says on that paper is enough to fill the store. I says what is it? He says John Hall owes me about $5,000. This paper was what was figured up, the note and interest.

Fred Wilcox, the constable who arrested John M. Hall, testified: " Q. What did Mr. Hall say at the time you served this warrant upon him? A. He wanted to know what this is for, and I said it was for forgery. He says, what is it? I says we will drive around to the barn and I will read it to you. So we drove around to the barn and I read the warrant to him,

and then he said he wanted to see his lawyer. So he started over to the lawyer's office, and I asked him on the way over where the note was. He says I haven't got any note. I says what have you done with it? He says I never had any. That was all that was said. This was April 17, 1902."

A notice to produce the note, of which it was alleged there was a copy in the indictment, was served on the defendant and his counsel before the trial, and they refused to produce any original note against John Benson, Sr. This, in connection with the above evidence and the record evidence that John M. Hall, the defendant, brought a suit against the Benson estate, and filed a copy of a note which was similar to the one set out in the indictment, and the other circumstances in evidence seems to us sufficient from which the jury could find that there was a note in existence, and that it was fraudulently made or caused to be made and uttered and published with the intent to cheat and defraud the estate of John Benson, Sr. From all the circumstances in evidence we think it was a legitimate inference for the jury to conclude that the note testified to by the witness, Rockwell, and other witnesses, was actually in the possession of Hall, and that he attempted to collect it, and that the note shown to Rockwell and to the other witnesses, and referred to by the memorandum Exhibit C, and the one described in the indictment, was one and the same note. And we fail to discover any evidence which would warrant the inference or conclusion that there was more than one note.

To all of this evidence no answer or explanation whatever, by way of testimony, was made by the defendant. In the absence of any explanation on the part of the defendant we think the jury was fully justified in finding the defendant guilty of fraudulently making or causing to be made the note in question, and also that it was done within five years of the date of the finding of the bill. A most careful examination of the evidence and the charge of the court does not disclose any error of which the defendant has just cause to complain.

The assignments of error are all dismissed, the judgment is affirmed, and it is ordered that the record be remitted to the court below to the end that its sentence may be executed.