[No. 13435. Department Two. July 7, 1916.]

PERRY BROTHERS, *Respondent*, v. DIAMOND ICE & STORAGE COMPANY, *Appellant*.[1]

WAREHOUSEMEN—COLD STORAGE—NEGLIGENCE—PLEADING. A complaint against a cold storage company alleging that plaintiff's eggs when placed in storage were fresh and in good condition and while stored became tainted with a foreign and unnatural flavor, makes out a *prima facie* case of negligence, without alleging specific acts, where plaintiff alleges it has no knowledge of the specific acts.

SAME—COLD STORAGE—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY. The negligence of a warehouseman as the producing cause of deterioration of a carload of eggs placed in cold storage is a question for the jury where it appears that the eggs were fairly tested before going into cold storage and showed no evidence of deterioration or foreign odor, and that four months later when taken out they had acquired a foreign odor which reduced their market value.

SAME — COLD STORAGE — NEGLIGENCE — EVIDENCE — ADMISSIBILITY. Upon an issue as to whether eggs in cold storage had become impregnated with a foreign odor, it is not prejudicial error to admit evidence that twenty cases from a lot of four hundred cases had been examined and tested, and that, in the opinion of experts, there was a fair test as to the quality of the lot; as the proper manner of testing is not a matter of common knowledge.

SAME. In an action against a warehouseman for damages for deterioration of eggs placed in cold storage, it is not error to admit evidence that eggs of another consignee, placed in the same room, came out of cold storage impregnated with the same foreign odor that caused plaintiff's damage.

SAME. In such a case, it is not prejudicial error to admit evidence as to the general course of business of the consignor in gathering and shipping eggs at that time of the year, although the witness was not present when the car in question was shipped.

WITNESSES—IMPEACHMENT. Technical error in allowing the impeachment of a witness upon a collateral issue does not warrant a reversal where its impeaching character was very slight.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse requested instructions that are covered in the general charge.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered October 1, 1915, upon the ver-

[1]Reported in 158 Pac. 1008.

dict of a jury rendered in favor of the plaintiff, in an action for damages to personal property stored, after a trial on the merits.    Affirmed.

*James B. Howe* and *A. J. Falknor*, for appellant.

*Thos. F. Murphine, Oliver Hulback,* and *Frederick R. Burch,* for respondent.

PARKER, J.—The plaintiff seeks recovery of damages which it claims to have suffered as the result of the defendant's negligence in allowing a quantity of eggs, placed in its custody for cold storage, to become tainted with a foreign and unnatural flavor, thereby rendering them unsaleable as first-class storage eggs.    Trial in the superior court sitting with a jury resulted in verdict and judgment awarding plaintiff damages in the sum of $578.59, from which the defendant has appealed to this court.

Respondent, Perry Brothers, is a corporation engaged in the produce business in the city of Seattle.    Appellant, Diamond Ice & Storage Company, is a corporation engaged in the cold storage business, maintaining its plant and warehouse in the city of Seattle.    On May 22, 1914, one I. L. Strong, having received at Seattle a carload shipment of eggs from the Henningsen Creamery Company of Minot, North Dakota, entered into a contract with appellant for the placing of the eggs in cold storage in its cold storage warehouse.    The eggs, consisting of four hundred cases, were accordingly received and placed in cold storage by appellant, excepting twenty cases thereof, ten cases being retained by Strong as samples for the purpose of testing their quality and ten cases being rejected by appellant as not suitable for storage because of the damaged condition of the cases and the breaking of some of the eggs therein, evidently occurring in shipment, which ten cases were turned over by Strong to respondent for sale upon his account.    On May 29, 1914, Strong sold the stored eggs to respondent and also

assigned to it his storage contract with appellant. During the fall of 1914, respondent received the eggs from appellant from time to time, when, as claimed by respondent, it discovered their damaged condition. Other facts will be noticed as may become necessary in our discussion of the several contentions made by counsel for appellant.

It is first contended by counsel for appellant that the superior court erred in overruling the general demurrer to respondent's complaint, the allegations of which, so far as we need here notice them, are as follows:

"That at the time said contract above referred to was executed and at the time that said carload of eggs were delivered to and received by the above defendant for cold storage the said eggs were in good grade, sweet and first class. . . .

"That owing to the negligence of the defendant all of said eggs while thus stored and in the custody and control of said defendant became tainted with a foreign and unnatural flavor and rendered unsaleable as first class storage eggs."

Prior to the filing of the demurrer by counsel for appellant, they moved the court to require respondent to make its complaint more definite and certain as to the particular acts of negligence on the part of appellant which caused the eggs to become tainted with the foreign and unnatural flavor. The court granted this motion, when counsel for respondent filed response thereto as follows:

"In reference to the specific acts of negligence constituting the acts of negligence alleged in plaintiff's complaint, plaintiff herewith states that it has no knowledge of any of said specific acts and has no means of obtaining knowledge thereof, and further that the said acts are within the knowledge of the defendant only."

The trial court, in overruling appellant's demurrer, manifestly read the above quoted allegations of the complaint together with this response to its order, as a part of the complaint. These allegations of fact, it is insisted by counsel for appellant, do not sufficiently plead negligence of appellant. It seems to us that the overruling of the demurrer by

the superior court must be held proper under our holding in *Smith v. Diamond Ice & Storage Co.*, 65 Wash. 576, 118 Pac. 646, 38 L. R. A. (N. S.) 994. In that case it was held, in harmony with the general rule as shown by the authorities therein cited, that a verdict for damages to meat held by defendant in cold storage was sustained by evidence that it was in good condition when delivered and became unmarketable by reason of the odor of iodoform and fish acquired while in defendant's custody. In other words, that in such a case the plaintiff claiming damages is not required to affirmatively prove the specific acts constituting the defendant's negligence in not properly caring for the commodity stored, but in order to make out a *prima facie* case it is only required to prove that the commodity went into storage in good condition and came out impregnated with a foreign substance. This is a different proposition from a commodity being in a good condition when going into cold storage and coming out showing deterioration from natural causes and the lapse of time only. So if it is true, as here alleged, that respondent's eggs were, when placed in storage in appellant's warehouse, fresh and in good condition and while stored there became tainted with a foreign and unnatural flavor, then respondent has made out a *prima facie* case of negligence against appellant, entitling it to recover the damages flowing therefrom in the deterioration of the value of the eggs so caused, and the burden of freeing itself from such presumed negligence by proof rests upon appellant. In other words, it is thereby put to its defense. We think it follows that respondent's complaint, read together with its response to the court's order to make its complaint more specific and certain, stated a good cause of action. We conclude that the court did not err in overruling appellant's general demurrer.

It is contended that the evidence is insufficient to sustain the verdict and judgment. It seems to be conceded that these four hundred cases of eggs were the accumulation of a promiscuous gathering of eggs produced in the neighbor-

hood of Minot, North Dakota, in the spring of 1914, from which point they were shipped by the Henningsen Creamery Company to Seattle to I. L. Strong, respondent's assignor, and that they were then probably from four to six weeks old. The eggs were packed in cases of the usual construction, containing small compartments partitioned off with cardboard. This cardboard portion of the cases is commonly called the fillers. Each case contained thirty dozen eggs. It is conceded that eggs are a perishable commodity; that they begin to deteriorate from the time they are laid and that cold storage does not entirely stop their deterioration but only retards it to the extent that they can be preserved in good condition for a period of about eight months. The eggs were shipped in an ordinary refrigerator car, but the car was not iced, this being evidently deemed unnecessary because of the time of the year. In its journey to Seattle, the car passed from temperature varying from near zero to eight-five degrees above zero. It seems highly probable, however, that the temperature in the egg cases would not vary nearly to this extent. When the car arrived at Seattle, Strong took therefrom ten cases of the eggs, five from near the middle and two from one end and three from the other, for samples to be tested by the usual method of candleing. These ten cases were so tested and found to be in good condition, that is, they showed no signs of natural deterioration, nor were they attended by any foreign or unnatural odor. Upon unloading the car at appellant's warehouse, ten cases were found somewhat damaged, that is, the cases were found broken and some of the eggs therein broken. The eggs in these cases were rejected by appellant as not fit for storage and were turned over by Strong to respondent for sale upon his account. An examination of the eggs in these ten cases showed them to be free from natural deterioration and free from foreign or unnatural odor. The testimony of witnesses seems to render it clear that, when the car was opened and during its unloading at appellant's plant, no foreign or unnatural odor was in the

car or attended the eggs. A few of the cases were found to be slightly damp. None of the eggs other than those in the twenty cases were taken from the cases for examination. The testimony of two witnesses experienced in handling and testing eggs tended to show that the taking of the twenty cases of eggs from the car and testing them as was done constituted a fair test of the quality of the entire lot. This is, in substance, the showing as to the condition of the eggs when received by appellant.

In September, 1914, about four months after the eggs were received and placed in cold storage by appellant, respondent commenced to take them out, and so continued from time to time during the fall of that year, when it was discovered that the eggs had acquired a foreign and unnatural odor or flavor, though they showed no evidence of decay or natural deterioration, being in outward appearance, and also as appearing when candled, suitable for the market as first-class storage eggs. But because of this foreign and unnatural flavor, respondent was compelled to sell them at a very much reduced price. No contention is made here as to the extent of the loss to respondent from this cause, the contention being only as to appellant's responsibility therefor. The flavor or odor with which the eggs had become impregnated was described by at least one witness as of a "fruity" character; others seemed hardly able to describe it other than that it was some odor foreign to eggs. One witness testified to the existence of a "fruity" odor in the room where the eggs were stored, and other eggs stored a portion of the same time in the same room came out impregnated with the same odor as respondent's eggs had acquired. It is conceded that eggs are susceptible to becoming impregnated with foreign odors, especially fruit odors with which they may come in contact, seriously damaged thereby, and for that reason it is very necessary that they be stored in a room by themselves so as to be free from such foreign odors.

The testimony introduced on appellant's behalf tended to show that its plant was of modern construction and operated with skill and care. But little evidence was offered in appellant's behalf tending to affirmatively show the cause of the eggs acquiring the foreign and unnatural odor, other than testimony tending to show that they might have acquired such odor from the cardboard fillers, some of which were slightly damp when the eggs were first placed in cold storage. It would seem, however, from the evidence that, in order for the eggs to become to any noticeable degree impregnated with the odor of the cardboard fillers, the fillers would be required to be damp for some considerable time. The testimony of appellant's manager given upon cross-examination, as abstracted by appellant's counsel, reads in part as follows:

"We examined this car just the same as we examined any others. We passed it as to the cases looking all right and apparently in good shape. We found nothing apparently damp about them. We found no smell or odor in any way except what is ordinary with a car of eggs. We set out ten cases as being broken. We found nothing wrong except these ten cases. We selected the ten cases from the three hundred ninety cases that were in the car. Those ten cases were the only ones in the entire car that gave any indication of being a poor storage proposition. When they came out of our plant they had this strong smell to them. I did not see any mold on these eggs. The fillers were not apparently damp when they came out. The eggs looked all right. We candled some of these eggs. There would be some rotten eggs in a case. There are always some. You take a case of eggs coming in from the country, claimed to be strictly fresh, nice eggs, you will find that lots of eggs in that case are rotten. That is true of all commercial eggs. These eggs before the candle looked a very good grade of storage eggs, as you would expect to find in storage eggs at that time of year. My idea would be that the eggs were contaminated with the smell of this strawboard filler."

Passing, for the moment, the question of the admissibility of certain of the testimony tending to show the good condi-

tion of the eggs when placed in cold storage, we are constrained to hold the evidence sufficient to show their good condition at that time, especially as to their being at that time free from foreign or unnatural flavor or odor, and also to hold that the evidence sufficiently shows that they acquired the foreign and unnatural flavor or odor while in cold storage in appellant's warehouse. We conclude that, under all the circumstances shown, and in the light of our decision in *Smith v. Diamond Ice & Storage Co., supra,* above noticed, the question of appellant's negligence as the producing cause of the eggs having acquired while in its warehouse a foreign or unnatural flavor or odor resulting in respondent's damage, became a question for the jury, and that we are not warranted in disturbing the verdict so far as the sufficiency of the evidence touching the question of appellant's negligence is concerned.

It is contended that the trial court erred in admitting proof of the condition of the twenty cases of eggs as shown by their examination when taken from the car. In this connection, it is also contended that the trial court erred in admitting the testimony of two witnesses as experts who were experienced in handling and testing eggs, to the effect that, in their opinion, the examination of the twenty cases of eggs taken from the four hundred case lot, as these twenty cases were taken, would constitute a fair test as to the quality of the whole four hundred cases. The argument is, in substance, that the condition of the twenty cases of eggs so examined and tested was inadmissible as evidence tending to show the condition of the three hundred eighty cases received and placed in cold storage by appellant; and that, in any event, if admissible, it was not proper to allow expert testimony as to the fairness of such testing of the quality of all the eggs. Having in mind the fact that the real contention here has to do with the question of the eggs becoming impregnated with a foreign flavor or odor, we are constrained to hold that neither the showing as to the condition of the twenty cases of

eggs nor the testimony of experts giving their opinion as to that being a fair test of the quality of all the eggs was prejudicially erroneous. Manifestly, the jury must have concluded that appellant was rendered liable because of the foreign flavor or odor acquired by the eggs while in its possession and not because of any natural deterioration of the eggs. It seems to us that the condition of the twenty cases of eggs taken from the car constituted some evidence tending to show that the lot as a whole was not impregnated with any foreign flavor or odor. It also seems to us that the proper manner of testing and determining the quality of a lot of eggs such as these is not a matter of such common knowledge as to exclude the opinion evidence given by those experienced in such matters. We conclude that the claimed error in receiving these two items of evidence was in no event prejudicial error.

One Klock was permitted to testify to the effect that certain eggs belonging to him stored in the same room with respondent's eggs in appellant's warehouse came out impregnated with the same odor or flavor as respondent's eggs. The admission of this testimony is claimed by counsel for appellant to have been erroneous. The argument seems to be that the evidence was improperly admitted because it was not shown in what condition Klock's eggs were when they went into the room with respondent's eggs. We are unable to see why this fact should exclude Klock's testimony as to the foreign flavor or odor possessed by his eggs when they came out of that room. That was some evidence tending to show the presence of a foreign or unnatural flavor or odor in that room with respondent's eggs. Even if Klock's eggs were so impregnated when they went in, as counsel for appellant seems to think ought to have been first shown, it would not change the fact of respondent's eggs having acquired such unnatural flavor or odor while there. This would not weaken the presumption that appellant was re-

sponsible for the foreign flavor acquired by respondent's eggs, since manifestly appellant caused Klock's eggs to be placed in that room with respondent's eggs.

It is contended that the trial court erred in permitting, over the objection of counsel for appellant, A. P. Henningsen, the president of the Henningsen Creamery Company of Minot, North Dakota, to testify in a general way as to the manner of that company acquiring, packing and shipping eggs at that time of the year. He testified in substance, that at that time of the year they shipped only number one eggs from that section of the country; that no others could be then had there; that usually the eggs were gathered and concentrated at the point of shipment and there packed in cases with fillers, with the small, dirty and cracked eggs thrown out; that at that time of the year they would pack an average of a car a day or sometimes a car every two days and immediately ship them. Upon cross-examination, it developed that Mr. Henningsen was not at Minot, North Dakota, when this car of eggs was collected and shipped to Strong at Seattle; hence, so far as his testimony relates to this car of eggs, it would have to be regarded as hearsay, and this was the ground upon which counsel for appellant sought to have all his testimony excluded, motion to that effect being by the court denied. Viewed in the light of technical rules of evidence, there is probably some ground for exclusion of a large portion if not all of this testimony. It can hardly be said, however, that any of it was hearsay, since it relates to the general course of business of his company with which it is to be presumed he, being its president, must have been acquainted. While this testimony seems to have some bearing upon the question of the natural quality of the eggs that company was accustomed to ship at that time of the year from that point, it hardly touched what is manifestly the real question here in issue; that is, whether or not the eggs here in question were, at the time they were placed in cold storage, attended with any foreign flavor or

odor.  Whatever technical error there may have been in receiving this testimony, we think it was plainly of not such a prejudicial character as to warrant a reversal of the judgment by reason of its admission.

Some contention is made in appellant's behalf that the court erred in allowing impeachment testimony to be introduced tending to impeach its witness Q. Peniston, its manager, on a collateral issue.  Reading the testimony of Peniston given upon cross-examination and the claimed impeaching testimony thereon given by Strong, we conclude that Strong's testimony must be regarded as of so slight an impeaching character as to not call for serious consideration from us as a ground for reversal of the judgment.  It was brought out on the cross-examination of Peniston that appellant, as he stated, had never permitted fruit to be stored in any of its rooms with eggs, except on occasions when the owner of the eggs expressly consented in view of the fact that his eggs were to remain but a short time and that this was done one time in connection with the storing of eggs for Mr. Strong for a short time.  The claimed impeaching testimony given by Mr. Strong was to the effect that he had not consented to the storing of eggs with fruit at the time mentioned. Plainly, this is of too small consequence to warrant reversal of the judgment, though it may be that the impeaching testimony was technically erroneously received.

Claim of error is made upon the giving of certain instructions by the trial court and the refusal of it to give others requested by counsel for appellant.  So far as the requested instructions are concerned, they were given in substance by the court, though in different language.  As to the instructions given by the court, we think it sufficient to say that they, as a whole fairly and fully covered the issues, in keeping with our decision in *Smith v. Diamond Ice & Storage Co., supra.* The error so claimed involves the question of law and presumption of negligence above noticed by us in disposing of

the question of the sufficiency of the complaint as stating actionable negligence in cases of this character.

We do not discover any prejudicial error in the record, and are therefore constrained to affirm the judgment. It is so ordered.

Morris, C. J., Bausman, Holcomb, and Main, JJ., concur.