NORFOLK & WESTERN RY. CO. ET AL. *v.* THE KEYSTONE PACKING CO.

(Decided January 22, 1934.)

*Mr. Burton P. Hollister* and *Mr. Ralph E. Clark,* for plaintiffs in error.

*Messrs. Goebel, Dock & Goebel,* for defendant in error.

Ross, J. This is a proceeding in error from the Court of Common Pleas of Hamilton county, wherein judgment was rendered for the defendant in error, The Keystone Packing Company, upon a general verdict.

The defendant in error imported two carloads of cherries from Italy. They were shipped from New York by steamship to Norfolk, Virginia, and from there by rail over the lines of the plaintiffs in error to Cincinnati. They were found to be frozen upon their arrival at destination.

The cherries were packed in barrels in a solution consisting of sulphur dioxide and a small quantity of

salt. The defendant in error refused the shipment, but upon request of the plaintiffs in error received the goods and processed them for salvage. The amount of damage named in the petition constitutes the claimed loss of defendant in error, due to the deterioration and waste.

The shipment to Cincinnati was made in ordinary box cars. The weather, while moderate at the time and place of loading the cars, turned severely cold before the arrival and customs' clearance of the cherries. The representative of the United States Weather Bureau testified that it was not unusual for the temperature to be below freezing in November, and that in December the temperature was usually below freezing in Cincinnati. The shipment left Norfolk on November 28, 1929, arriving at Cincinnati December 5, 1929.

One barrel of cherries was overlooked in the original shipment, and it arrived in good condition later on. The contents of this barrel were processed with the rest of the shipment, and no allowance was made for the fact that it was not damaged.

There was evidence that this particular brand of cherries was usually received in this country during the late fall and early winter, that the defendant in error had during the course of many years received by freight some 1000 to 1200 cars of such cherries, that they were always shipped in "insulated cars"; and that the representative of the plaintiffs in error had solicited defendant in error's business, and understood and agreed that shipments of cherries should be made in "insulated cars." This employee of the railroad company testified, and did not deny this statement. He stated that the defendant in error had not requisitioned "refrigerator cars."

Mr. Rexenger, of the defendant in error, testified:

"Q. In the year 1929 did you give them any instructions and when did you give those instructions?

"A. The soliciting agent received the instructions.

"Q. When did you give the instructions, if any?

"A. Around the first movement of cherries.

"Q. When was that? A. Around October.

"Q. Who did you speak to? A. Mr. Niemeyer.

"Q. What did you say to him?

"A. He called on the phone and said, 'Received the arrival of boat shipment,' and he would say, 'Will I get the freight?' And I would say, 'Yes.' And he knew, and he received instructions that from November on that we had insulated cars."

The railroad company employee testified:

"Q. Did Mr. Rexenger at that time or before that time request you as an agent of the N. & W. Railroad to put any of his cherries moving on the N. & W. Railroad in refrigerator cars?

"A. No, sir."

The defense is largely based upon the manner in which the packing was designated upon the shipping bills, one of which being marked "Cherries in Brine." It is contended that this means salt water, and that if the cherries had been in a solution of salt water they would not have frozen. There was no evidence as to what percentage of salt is necessary; to prevent freezing at given temperatures, or at the temperature of the weather during transit of the shipment.

There was evidence by a former railroad employee that similar shipments were always sent in insulated cars during the period of year in which the instant shipment was made.

The plaintiffs in error also relied upon Rule 30, of the General Rules and Regulations of Perishable Protective Tariff No. 4, covering "non application for account of boat lines."

"When carload shipments of perishable freight are to be handled by Boat Lines, for re-delivery to rail carrier, shipper must specify in building instructions

and bill of lading, the protective service to be accorded shipment by such rail carrier, which instructions shall be in harmony with services covered by Rule No. 80.''

We consider this later in connection with the charge of the court,

The question presented to the jury was whether plaintiffs in error were negligent in carrying the shipment in ordinary box cars during a season when freezing weather was likely to occur in the region in which the destination of the shipment lay; especially in view of the fact that the defendant in error had an agreement with the plaintiffs in error, through its employee, that ''insulated cars'' should be used. All of the evidence was to be taken into consideration by the jury. We cannot find that the jury were not justified in their conclusion.

The court refused to give three special charges, the first two of which were correct, and were in substance included in the general charge. The fact that in substance they were given in the general charge does not cure the error of their refusal. *Washington Fidelity National Ins. Co.* v. *Herbert,* 125 Ohio St., 591, 183 N. E., 537. However, in the petition in error, plaintiffs in error confine the assignment of error to charge No. 3 alone, thus waiving the prejudicial error committed as to charges Nos. 1 and 2. Charge No. 3 is as follows:

''I charge you that the tariffs, rules and regulations filed with the Interstate Commerce Commission, and shown in defendant's answer, and agreed to by the plaintiff in plaintiff's reply as being correct copies of said tariffs, rules and regulations, are to be read into the contract of shipment between the plaintiff and the defendants, and that the plaintiff and defendants are bound by such tariffs, rules and regulations.''

The answer contains quite a number of rules and regulations, many of which are wholly inapplicable to the facts in this case, as for instance those referring

to refrigeration. It is questionable whether any special charge requiring reference to other documents and papers should be unqualifiedly approved. The object of special charges is to clarify the issues, and the greatest care must be used to make them simple, clear and plain.

In the general charge the court said:

"There have been introduced some regulations of the Interstate Commerce Commission. I say to you in view of the testimony in this case it is not necessary to consider those because I am putting up to you the question of whether the defendants exercised proper care under the circumstances in this case."

The point is made that if the shipper wanted "protective service", he must specify same, as is provided in Rule 30, *supra*. There is no evidence to show that "insulated cars" come within the meaning of "protective service". There is evidence that such cars would have prevented freezing. In the absence of evidence that by "protective service" refrigerator cars were meant, and were necessary to protect the shipment, or that "insulated cars" constituted "protective service", we consider the court's charge proper. We have no judicial knowledge of the terms outside the record.

The question, as before stated, was: Did the railroad company, in view of all the circumstances, and in the absence of any instructions, use the care required by ordinary prudence in selecting the type of car used?

It is claimed there was no proof of the condition of the shipment at the time it was received and loaded. One barrel, a part of the shipment, was, as was said before, overlooked, and came on later. This was in perfect condition. It indicates to some extent at least the condition of the rest of the shipment when loaded. As to this barrel it is claimed it was tossed in with the

general damaged lot to be salvaged. We feel there is no reason why the railroad should be required to pay loss upon a barrel which it is admitted was not damaged. The judgment may be reduced and modified accordingly, and finding no other error prejudicial to the plaintiffs in error the judgment, as so modified, is affirmed.

*Judgment modified and affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.