Del Gaizo Distributing Corporation, Appellant, *v.*
Gallagher.

Argued October 12, 1936.

54

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Joseph A. Keough,* with him *Levi, Mandel and Miller,* for appellant.

*Algernon R. Clapp,* of *White & Clapp,* with him *Harold Cooper Roberts,* for appellee.

OPINION BY JAMES, J., May 15, 1937:

This is an action of assumpsit to recover the value of 35 cases of tomato paste stored by plaintiff in defendant's warehouse, which defendant refused to deliver upon demand. At the trial the court gave binding instructions for defendant and later refused plaintiff's motion for judgment n. o. v., or a new trial.

The agreed statement of facts, in lieu of printing the record, is substantially as follows: On September 30, 1933, defendant issued and delivered to plaintiff two warehouse receipts for a total of 600 cases, and on October 2, 1933, four warehouse receipts for a total of 1330 cases, all alleged to contain tomato paste, the relevant portions of said receipts being as follows:

"GALLAGHER'S WAREHOUSES No. 18525,
50 South Third St.,
Philadelphia, Pa., Sept. 30th, 1933.
This is to certify that we have received in Storage

Warehouse, 810-24 S. Swanson St., Bldg. 20-2 Floor for the account of Del Gaizo Dist. Co. ex in apparent good order, except as noted hereon (contents, condition and quality unknown) the following described property ...... to be delivered to.. .........upon the payment of all storage, handling and other charges.

| Number | Packages | Contents | Marks |
|---|---|---|---|
| 500 | cases | Tomato Paste 100—6 ½ Oz. | F      D |

Del Gaizo

NON-NEGOTIABLE

G. Foti

* * * * * * *

GALLAGHER'S WAREHOUSES

Claims a lien for all lawful charges for storage and preservation of the goods, also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses, in relation to such goods

GALLAGHER'S WAREHOUSES

By James Gallagher, Jr.

* * * * * * *"

The warehouse receipts were identical except as to the number of cases, and a notation on one receipt for 500 cases, dated October 2, 1933, as follows: "1 case 2 cans short. 1 case 10 cans short, 16 cases stained."

Plaintiff imported all 1930 cases, alleged to contain tomato paste, from Italy. The cases were shipped in round wooden boxes containing sealed cans, so that it was impossible to ascertain the contents of the cases without opening them, or to ascertain the contents of

the cans without opening them in turn; and neither plaintiff nor defendant had any actual knowledge of the contents of said cases or cans. Between October 27, 1933 and February 3, 1934, plaintiff withdrew from defendant's storage house, 1895 of said cases. On February 5, 1934, plaintiff issued to one of its customers, R. Scetto and Son, an order on defendant for the remaining 35 cases, which order was presented on February 13, 1934; defendant failed to deliver the 35 cases or any part thereof. In addition to the charges paid by plaintiff to defendant, storage charges accrued for the storage month commencing February 2, 1934, on 65 cases, of which 50 cases were withdrawn on February 3, and the remaining 15 cases on February 5, 1934. For said storage there was a charge of $1.30, which plaintiff has never satisfied or offered to satisfy.

At the trial the court sustained defendant's objection to plaintiff's offer to prove that the merchandise covered by the warehouse receipts was packed in cans in Italy and shipped to plaintiff in Philadelphia in the original closed packages, that plaintiff through its agent, Tofini, sold and distributed 1895 cases of the merchandise to plaintiff's customers and there were no complaints from any of the distributees that any of the packages contained any substance other than tomato paste; and to the offer to prove by the witness, Scetto, that he distributed 80 cases out of the lot covered by the warehouse receipts among his customers and there were no complaints from any of them that the contents of the cases contained any substance other than tomato paste.

Plaintiff relies upon the warehouse receipts as prima facie evidence of the receipt of the described merchandise. He concedes that where a warehouseman has redelivered a package to a consignee or owner, when it is found that the contents are different than described in the receipt, proof must be made that the contents of the package conform to the receipt; but contends that

where a warehouseman fails in his duty to make re-delivery of the package and contents, the receipt is prima facie evidence of the contents. The giving of a receipt by a carrier stating that goods were received "in apparent good order, except as noted, contents and condition of contents of packages unknown" is an admission as to conditions visible and open to inspection: *Isdaner v. Phila. & Reading Ry. Co.,* 54 Pa. Superior Ct. 509; and the burden of going forward with the evidence and rebutting the presumption raised by such a receipt falls on the carrier: *Beresin v. Penna. R. R. Co.,* 116 Pa. Superior Ct. 291, 176 A. 774. But where the goods are not visible and open to inspection, on a receipt for goods in apparent good order except as noted "(contents, condition and quality unknown)," the plaintiff must prove that the goods were in good condition when delivered to the carrier, and there is no presumption in the absence of evidence that they were in such condition: *Castellucci v. Lehigh Valley R. R. Co.,* 40 Pa. Superior Ct. 24; *Speare v. Phila. & Reading Ry. Co.,* 47 Pa. Superior Ct. 639; *Isdaner v. Phila. & Reading Ry. Co.,* supra. The burden is upon the plaintiff to prove that the package delivered to the carrier contained the articles which the bill of lading called for: *Isdaner v. Central R. R. of N. J.,* 65 Pa. Superior Ct. 156. In *Speare v. Phila. & Reading Co.,* supra, a suit brought for a lot of second-hand household goods in apparent good order, contents and condition unknown, shipped from Portland, Oregon, this court said: "The burden was upon the plaintiff to prove, in order to recover of the defendant the value of the goods which she alleged had been lost, that the goods had come into possession of the defendant. She could not discharge this burden by merely proving that a certain number of packages had been delivered by the Trans-Continental Freight Co. to the Michigan Central Railroad Co. at Chicago, she was required to go further and

show that the packages so delivered contained the goods which she asserts were lost." The designation that the cases contained "tomato paste" must be considered in connection with the other language of the receipt, to wit: "contents, condition and quality unknown." Similar receipts in which the designation was as specific as the present receipts were held not sufficient to bind the carrier in the absence of proof of the contents of the shipment: *Shore v. N. Y., N. H. & H. R. Co.,* 99 Conn. 129, 121 A. 344, "1 box Shirts;" *Dworkwitz v. N. Y. Cent. R. R.,* 230 N. Y. 188, 129 N. E. 650, "One case cl. (clothes);" *Miller v. Hannibal & St. Joseph R. R. Co.,* 90 N. Y. 430, "30 bbls., eggs;" *Josephy v. Panhandle & S. F. Ry.,* 235 N. Y. 306, 139 N. E. 277, "Dressed Poultry weight 20,000 lbs." We therefore conclude that the warehouse receipts were not sufficient to establish the contents of the cases, and plaintiff was required to produce additional proof. But in order to successfully carry this burden it was not necessary to show, by direct evidence, the contents of the cases at the time they were delivered to the warehouse. It would be impracticable if the rule of the law would be satisfied with nothing less than such direct positive proof: *Kauffman v. Central R. R. Co. of N. J.,* 41 Pa. Superior Ct. 486.

With this rule in mind, did the trial court properly reject the offers made by plaintiff?

"(b)  *Existence of the Whole inferred from a Part, or of one Part from Another.*  To argue to the whole from a part, or to one part from another, is also, in the last analysis, an argument from one effect of a common cause to another effect. But for practical purposes it is sufficient to treat the inference as an immediate one. The condition of the inference's propriety is that in human experience the whole has been found probably to exist with certain related parts; it is then admissible to use the existence of one of the parts as evidence from

which to infer the presence of the whole or of one of the associated parts,—as where, observing a floating iceberg, it is inferred that beneath the water's surface is a larger mass of ice in the proportion usually found associated with such a mass above water; or where on observing, from one side of a locomotive, two driving-wheels, we infer that on the other side there are two similar ones. This sort of inference is common enough in trials, but does not seem to have raised any difficulties requiring rulings": Wigmore, Evidence, Vol. 1 (2nd) §438, p. 776. *"Same: Samples as Evidence of an Entire Lot.* It is on the present principle that a sample is receivable in evidence to show the quality or condition of the entire lot or mass from which it is taken. The requirement is merely that the mass should be substantially uniform with reference to the quality in question, and that the sample portion should be of such a nature as to be fairly representative. When the sample is not taken from the very substance or article in issue, but from another one, the only difference in the argument is that another inference is introduced, i. e. the inference of Identity (ante, §411) ; it must first be evidenced that substance A is in nature identical, for the purpose in hand, with substance B, and then a sample from B, working through a double inference, evidences the nature of substance A": Wigmore, Evidence, Vol. 1, (2nd) §439, p. 778.

In *City of Philadelphia v. Rule,* 93 Pa. 15, the City of Philadelphia brought a scire facias sur municipal claim against defendant's property for paving, assessed by foot-front rule. To rebut the defense of defective paving, the city offered in evidence stone from the same quarry from which the paving blocks had been taken. The court rejected this evidence. On appeal, the Supreme Court ruled that it was improper to exclude the sample of stone from the quarry to show the quality of the paving blocks.

In *Dubois v. Bigler, Young & Co.*, 95 Pa. 203, plaintiffs sued to recover the contract price of two steam engines they had built for the defendant, upon foundations furnished by the defendant. Defendant claimed that the engines were defectively built; plaintiffs claimed that the defects, if any, where in the foundations. To show the nature of the ground on which the foundations were built, defendant offered in evidence samples taken from near the base of the foundations and samples taken from the ground thirty feet away. The trial judge admitted the former, but not the latter. On appeal this ruling was upheld.

In *Norfolk & Western Railway Co. et al. v. Keystone Packing Co.*, 49 Ohio App. 136, 195 N. E. 403, the good condition of cherries at the time of shipping was shown by the good condition of cherries from the same original lot that remained good by not having been with the others. The opinion of Ross, J. was in part as follows: "The defendant in error imported two carloads of cherries from Italy. They were shipped from New York by steamship to Norfolk, Va., and from there by rail over the lines of the plaintiffs in error to Cincinnati. They were found to be frozen upon their arrival at destination ...... One barrel of cherries was overlooked in the original shipment, and it arrived in good condition later on ...... It is claimed there was no proof of the condition of the shipment at the time it was received and loaded. One barrel, a part of the shipment, was, as was said before, overlooked, and came on later. This was in perfect condition. It indicates to some extent at least the condition of the rest of the shipment when loaded ......"

In *Com. v. Goodman*, 97 Mass. 117, to show that the beer on defendant's premises was intoxicating, a witness was allowed to testify to the intoxicating character of beer of the same brand as that found on defendant's premises. In *Epps v. State*, 102 Ind. 539, 1 N. E. 491,

to show that the arsenic that killed the deceased had not been in bismuth administered to him by a doctor, a chemist was allowed to testify that an analysis made by him of other bismuth from the same lot from which the doctor had obtained the bismuth showed no traces of arsenic. In *Vietti v. Nesbitt,* 41 Pac. 151, to show the amount of moisture in certain gold ore, evidence was admitted of the amount of moisture in "ore taken from the same ore body, and near where the ore in question came from, but in an adjoining mine, and shipped and worked under somewhat similar circumstances." In *Golden Reward Min. Co. v. Buxton Min. Co.,* 97 Fed. 413, (C. C. A. 8th, 1899), to show the value of certain ore, testimony of the value of ore from the same general vicinity was admitted. In *McConnell et al. v. Lewis,* 58 Neb. 188, 78 N. W. 518, to show the quality of a quantity of leather, several pieces of the leather were admitted in evidence. In *Chicago & A. Ry. Co. v. Howell,* 208 Ill. 155, 70 N. E. 15, to show the size of the box car that injured plaintiff, a witness familiar with the car was allowed to testify to the size of other box cars in the same series as the one in question, they all being of uniform size. In *Perry Brothers v. Diamond Ice & Storage Co.,* 92 Wash. 105, 158 Pac. 1008, to show the good condition of certain eggs when put in storage, evidence was admitted of the good quality of a few of the eggs selected from the mass at the time the eggs were stored. In *Davis v. Van Camp Packing Co.,* 189 Iowa 775, 176 N. W. 382, to show that certain cans of beans were contaminated, it was held that evidence should be allowed to show that other cans of beans from the original batch were also contaminated.

To prove its case, plaintiff must rely upon inferences drawn from inferences. There is no longer any question that such process of reasoning by the jury is not objectionable. Mr. Justice MAXEY made this clear in *Neely v. The Provident Life and Accident Insurance*

*Co.,* 322 Pa. 417, 185 A. 784: "With the distinction clearly in mind between presumptions and inferences it is obvious that no presumption can be founded on a presumption; and it is equally obvious that inferences may be founded on inferences, as they are in the investigations carried on by scientific men and in the every day affairs of life. As to the proposition that inferences cannot be based on inferences, Wigmore on Evidence, 2d edition, volume 1, section 41, says: 'There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of his design. In these and innumerable daily instances we build up inference upon inference, and yet no court ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.' Dean William Trickett in an article published in 'The Forum' of the Dickinson School of Law, for March, 1906, volume 10, page 123, characterized the postulate that 'when facts are to be inferred from other facts the latter must be established by direct evidence' as 'error,' and suggests that as a doctrine occasionally recognized as a principle of proof it ought to be 'extirpated.' Both in the activities of laymen and in the administration of justice there are many examples of the permissible drawing of more than one inference from a primary established

fact. When jurors in their deliberations arrive by a process of reasoning at an acceptable inference of fact, they have a right to add such fact to any previous facts found by them and proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by like process until they arrive at the ultimate conclusion on the issue trying."

See also *Reed v. Horn's Motor Express, Inc.,* 123 Pa. Superior Ct. 411, 187 A. 275.

Viewed in the light of these principles, we are persuaded that the testimony offered by plaintiff should have been received. Its weight and persuasion was a question for the jury. The fact that plaintiff's customers had purchased 1895 of the 1930 cases from defendant's warehouse and no complaint made by any of the customers that the cases did not contain tomato paste, was evidence that the 1895 cases did contain tomato paste; and from this the jury would be warranted in inferring that the 35 cases involved also contained tomato paste. It may be true, as suggested in the opinion of the court below, that the failure to make complaints by the various customers could be accounted for on various assumptions, yet the extreme improbability that there would be no complaints by the various purchasers of such a large number of cases would be such a series of circumstances as would warrant the jury in inferring that the goods delivered were tomato paste, from which the jury would be further justified in inferring that the remaining cases, being less than two per cent of the entire number of cases delivered to the warehouseman, were of the same character as had already been redelivered by the warehouseman.

Defendant urges that the judgment was properly entered because of the failure of plaintiff to satisfy or offer to satisfy the lien for storage charges. The refusal or failure to deliver the 35 cases by defendant was not based on this ground. "The general rule is well

settled that, before an action for conversion or replevin for goods stored with a warehouseman, or an action of assumpsit on the implied promise to deliver the property or pay its value, may be maintained, it is necessary to pay or tender payment of the amount due for storage and other charges for which the warehouseman has a lien on the goods. Nevertheless a warehouseman cannot defend an action for nondelivery because of nontender of storage or other charges for which he has a lien on the goods where he bases his refusal to deliver them on other distinct grounds, and failure to make such a tender is excused where the warehouse is closed without any person being in charge to whom payment can be made, and there is no other warehouse in the state where a demand and tender of charges can be made": 67 C. J. §244, p. 560, citing cases from various jurisdictions, among which is *Clowes v. Hughes Bros.*, 3 Pa. Superior Ct. 561, sustaining the language of the text.

Before delivery the warehouseman was entitled to the storage charges, but it would be a useless thing for plaintiff to have paid or offered to pay the storage charges, when it appears that the failure to deliver the cases was not based on this ground.

The assignments of error are sustained and the judgment is reversed with a venire facias de novo.