Commonwealth *v.* Cese, Appellant.

Argued October 1, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WOODSIDE and ERVIN, JJ. (WRIGHT, J., absent).

*Mark C. McQuillen,* with him *Angelo J. Baro,* for appellant.

*Edward Youngerman,* Assistant District Attorney, with him *Henry M. Koch,* District Attorney, for appellee.

OPINION BY ERVIN, J., November 15, 1954:

The indictment in this case charged defendant with pool-selling, book-making and recording bets on a horse race or horse races, with setting up a lottery, with being unlawfully concerned in the managing, conducting or carrying on of a lottery and with selling lottery tickets.[1] The count charging the defendant with selling lottery tickets was eliminated but he was found guilty by a jury on the remaining charges. After his motions in arrest of judgment and for a new trial were refused the defendant was sentenced to a term of not less than sixty days nor more than one year in the Berks County prison and to pay a fine of $500.00 and costs. This appeal followed.

On May 21, 1953 at about 2:30 P.M. a group of five police officers and detectives of the City of Reading, as the result of information received, having a search warrant, conducted a search of the premises occupied by the defendant at 206 North Fourth Street, Reading, Pennsylvania. On top of a desk in the dining room of

---

[1] The Penal Code of June 24, 1939, P. L. 872, §§601, 602 as amended by the Act of May 21, 1943, P. L. 306, §1, and 607, 18 PS §§4601, 4602 and 4607.

the defendant's home the officers found two news-
papers, each an edition of The Morning Telegraph, a
racing publication, one dated May 20, 1953 and the
other dated May 21, 1953. The officers also found
sheets and slips of paper on top of the desk and other
sheets in a drawer of the desk. Many of the sheets had
numbers listed on them while other sheets contained
names of horses, numbers and other notations. Also
found were two programs from a race track, a handi-
capper sheet, and a 1951 desk memorandum contain-
ing notations of days and numbers and a small loose-
leaf notebook containing a columnar listing of the days
of the week with different numbers listed opposite cer-
tain of the days shown thereon. At the trial, one of
the detectives in the group that searched the premises
of the defendant identified the articles found in the
defendant's home and explained how the sheets con-
taining the columnar listings of numbers were cus-
tomarily used in the "numbers" game and how the
sheets containing columnar listings of horses' names,
various letters and numbers were used in pool-selling
and bookmaking. In explaining how bets on horse
races are recorded the detective stated: "First the
horse's name is taken, then the track, the number of
the race the horse runs in, whether the first, second,
third, fourth, fifth, sixth, seventh or eighth race. Then
the name of the track is either written out or initialed
after the race. Further on there are notations as to
the amount bet. There are three positions the man
can bet, first to win, second for place, third to show."
It was also explained that the recording of an "X" in
one or more of the three positions indicated no bet was
made on that position. The correlation between in-
formation contained in the racing publication, The
Morning Telegraph, and the sheet with the horses'
names, and other notations thereon, was explained as

follows: One of the slips of paper contained the nota-
tion "Big Print" and immediately after that a nota-
tion of "7" and the letter "Y." The detective was
asked: "Q. In looking over the Telegraph did you find
the name of Big Print? A. Yes, I find the name of Big
Print, the name of a horse running in the 7th race in
New York Belmont Park Track and the bets are
marked $10. to win and X, X. Q. The bet is marked
$10. and two X's? A. Yes .... Q. Do any of the other
names that you say are horses, names of horses, do they
show up in the Telegraph any place? A. Here is one
marked Trinacria. It's marked the 8th in New York
Belmont Park. That was No. 5 horse in the 8th race.
There was also another one marked Swivet, the third
at Jersey, right in that paper. Q. That Swivet, does
that appear as a race horse at N. J. that day? A. Yes,
3rd race, Garden State Park."

In addition to this testimony relating to the type
of gambling paraphernalia found in the defendant's
home, it was testified that shortly after the officers
arrived there was a telephone call. Defendant hur-
riedly picked up the phone, called in a loud voice "Call
me later" and hung up before the officers could reach
the telephone. Also, when one of the officers found
some papers on the desk of the defendant he grabbed
them and attempted to tear or destroy them. These
papers were retrieved by the officers and were included
in the evidence presented by the Commonwealth.

Appellant contends the Commonwealth's uncon-
tradicted evidence is not sufficient to sustain the con-
viction under the circumstantial evidence rule. The
requirement of the law is stated in *Commonwealth v.
Bausewine*, 354 Pa. 35, 41, 46 A. 2d 491, as follows:
"The reasonable inference of guilt must be based on
facts and conditions proved; it cannot rest solely on
suspicion or surmise. These do not take the place of

testimony. The facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant, not necessarily beyond a moral certainty, nor as being absolutely incompatible with his innocence, but at least beyond a reasonable doubt."

Although the evidence in the instant case was not very strong we are convinced it was sufficient to support the verdict. It was clearly established that the appellant had in his possession in his residence records and paraphernalia which were obviously used in the recording and registering of bets on horse races. While the quantity of the paraphernalia was not considerable, it was sufficient to indicate appellant was engaged in maintaining a bookmaking establishment. See *Com. v. Stoe,* 167 Pa. Superior Ct. 300, 74 A. 2d 526. The evidence also established that appellant had in his possession a loose leaf notebook and numerous sheets of paper containing recordations of "numbers" bets. In considering this kind of evidence in *Com. v. Wade,* 156 Pa. Superior Ct. 88, 39 A. 2d 460, President Judge KELLER stated: ". . . we agree with the learned court below that the evidence, showing his possession within the county—where he resided—of a large quantity of paraphernalia appropriate for, and of use only in, the conduct or carrying on of a 'numbers' lottery, some of which related to lotteries occurring on a prior date and some to be used in the future, was sufficient to sustain his conviction on the counts charging him with being concerned in the carrying on of such a lottery, and it was wholly unnecessary to show the exact manner or extent of his relation to such carrying on." See also *Com. v. Adams,* 174 Pa. Superior Ct. 504, 102 A. 2d 202. The number of sheets of paper and the extensive columnar listings thereon belie any claim these were only records of the appellant's plays. More-

over, the name "Joe" appears on sheet 3 and "Bill" appears on sheet 4, both in Commonwealth's Exhibit 5.

It was stated in *Com. v. Wade,* supra, at page 91: "Jurors have a right to use their common sense, acquired in the ordinary affairs of every day life, and, using it in considering the evidence in the case, to determine that a man having in his possession great quantities of material and paraphernalia used for carrying on a numbers lottery, and useful for no other purpose, is concerned, then and there, in its carrying on, whatever may be his exact relationship to it."

In addition to the books, papers, records and other paraphernalia found in appellant's possession in his home there is other evidence which supports the conviction in this case. One of the officers testified that shortly after they were admitted to appellant's home the telephone rang. The officer testified: "I tried to get to the telephone but Mr. Cese was nearer and he picked it up part way off the receiver and called in a loud voice, 'call me later', and hung up before I could get to him." The telephone call may have had nothing to do with any of the illegal activities being conducted in appellant's home but he effectively prevented the officers from determining whether it did or not. Defendant's failure to take the stand and explain the nature of the call or to call as a witness the one who made it is also significant. While in itself the telephone call is far from conclusive, nevertheless it is a reasonable inference appellant was trying to prevent the officer from taking a call which might have been incriminating, and the action of the appellant is a factor to be considered in determining whether there is sufficient evidence to sustain his conviction.

Much more significant is the attempt of the appellant to seize and destroy some of the papers contain-

ing notations when one of the officers was taking them from the desk. Lt. Slapikas testified: "As I took these from the desk Cese grabbed for them. He got part of them and I had the remainder in my hand. I later regained the rest from him." Such an attempt to destroy evidence supports a strong inference of guilt. It was so considered in *Com. v. Fisher*, 166 Pa. Superior Ct. 245, 70 A. 2d 372, where it is stated at page 249: "The attempted destruction of the papers (Commonwealth's Exhibits 1 and 2) is an important circumstance, and indicates that the signal given by Lentz was meant to warn appellant to dispose of any damaging evidence."

There is no merit in appellant's contention that the two editions of the racing newspaper, The Morning Telegraph, the sheets of paper listing numbers and betting data and the memorandum book should not have been admitted into evidence. As noted supra these items were identified as being in the possession of the appellant in his home and their use and correlation in the pool-selling, bookmaking and lottery activities of the appellant was clearly established by the testimony of the police expert. They were competent and relevant to the charges contained in the indictment. They constituted the essential and required material for the conduct of his unlawful activities and as such they were admissible as evidence of his guilt. See *Com. v. Fisher*, supra.

Appellant also contends the indictment should have been quashed for duplicity. He contends the first count in the indictment is duplicitous in that the charge "did wilfully and unlawfully engage" is a separate and independent offense from that of to "assist or abet a pool-selling or bookmaking . . . ." He also contends the second count is duplicitous in that the charge "erect and set up" constitutes a separate

and distinct offense from that of "open, make or draw a certain lottery." It is well established that two or more offenses, distinct and unconnected, should be charged in separate counts. *Com. v. Morgan,* 174 Pa. Superior Ct. 586, 102 A. 2d 194. However, when two or more offenses arise from a single act or transaction, or are closely related, they may be joined in one count of an indictment. *Com. v. Sutton,* 171 Pa. Superior Ct. 105, 90 A. 2d 264. Moreover, where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a phase in the same offense, the different acts may be coupled in one count. It is not regarded as duplicity thus to join successive statutory phases of the same offense. *Com. v. Hall,* 23 Pa. Superior Ct. 104. In this case it is clear we have joined in one count successive phases of the same offense and for each distinct phase an indictment will lie. However, when the separate offenses are committed by the same person at the same time, as occurred in this case, the separate phases may be included in one count.

Equally without merit is appellant's attack upon the court's charge. After a thorough study of the charge we are convinced it was fair and complete and in no way prejudiced the appellant. Moreover, considering our own estimate of the quantity of the evidence as noted supra, the learned judge of the court below properly stated in his charge: "As I said to you, the evidence is slight. After all it is not for me to say whether it is strong or not, whether the Commonwealth has carried the burden or not, but I do feel I should caution you that it is not as strong as I wish it to be in a case of this kind to justify a conviction; but, after all, it is for the jury to determine whether it is sufficient to satisfy you of the guilt of defendant beyond a reasonable doubt."

The judgment and sentence are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.