Commonwealth, Appellant, *v.* Bolger.

Argued September 25, 1956. Before Rhodes, P. J., Gunther, Wright, Woodside, Ervin, and Carr, JJ. (Hirt, J., absent).

*Herbert C. Nelson,* Assistant District Attorney, with him *Bernard E. DiJoseph,* District Attorney, for appellant.

*James P. Geoghegan,* for appellee.

OPINION BY ERVIN, J., November 13, 1956:

This is an appeal from a decree of the lower court dismissing the Commonwealth's exception to the action of that court wherein it sustained defendant's demurrer.

Defendant was indicted in one bill charging failure to stop at the scene of a motor vehicle accident and failure to exhibit operator's license and to give identification at the scene of an accident. Act of May 1, 1929, P. L. 905, Art. X, §1025, as amended, 75 PS §634.

The evidence, considered in the light most favorable to the Commonwealth, was that at about 4:00 a.m. Sunday, October 2, 1955, John Bodnar was driving his Mercury automobile in an easterly direction on the right-hand side of West Elm Street in the Borough of Conshohocken. Another car was approaching him from the opposite direction and this car struck Bodnar's automobile, damaging the entire left side of same. The other car was not stopped at the scene. Bodnar did not get the license number of the other car. He immediately reported the matter to the Conshohocken police

and Officer Bland took Bodnar in his police car and cruised around in an effort to locate the other car. The following Tuesday, October 4, 1955, Bodnar, in examining his car, found a piece of chrome embedded under the left front fender. On Friday of the same week other pieces of chrome were found at the scene of the accident. These pieces of chrome were delivered to the Conshohocken police. The police, in their investigation, located an Oldsmobile convertible parked in front of the defendant's home, a short distance from the scene of the accident. This car was damaged on the left side and appeared to have been in a recent accident. The police then checked the chrome which had been turned over to them and found that several pieces fitted exactly on the defendant's car. The police testified that the victim's car was painted a dark metallic green and that the defendant's automobile was painted a light pea green. It was testified that on a piece of chrome which fitted the defendant's car was what appeared to be dark metallic green paint similar to the color of the paint on the victim's car. Testimony also showed that on the left side of the defendant's car there was dark metallic green paint in spots similar to the color of the paint on the victim's car. There was also found light green paint in spots on the left side of the victim's car similar in color to the paint of the defendant's car. The police secured the license number of the defendant's car, which was Pa. JC344. It was ascertained that this license number had been issued to the defendant. Upon the presentation of this testimony the Commonwealth rested. The defendant thereupon demurred, which demurrer was sustained by the court. The Commonwealth excepted to the action of the court in sustaining the demurrer of the defendant. Argument was had before the lower court in banc and that court, in

an opinion written by the trial judge, dismissed the Commonwealth's exception. The lower court, in its opinion, stated that "A jury could not without conjecture or surmise reach the conclusion that (1) Bolger's car was the vehicle involved in the accident on October 2, 1955, and (2) that Bolger was the driver of that car without entertaining a reasonable doubt as to one or both of these essential factors" and that "It is apparent that a conviction based on these sketchy facts could only be the result of conjecture, suspicion and surmise."

We are convinced that the evidence of the Commonwealth made out a prima facie case sufficient to compel the defendant to come forward with a defense. Counsel for the appellee cited *Com. v. Kolsky,* 100 Pa. Superior Ct. 596, for the principle of law that to justify a conviction, where the Commonwealth's evidence tending to connect the defendant with the crime is wholly circumstantial, the evidence of facts and circumstances must be such as to exclude to a moral certainty every hypothesis but that of guilt of the offense imputed. This is no longer the law in Pennsylvania. The requirement of the law is stated in *Com. v. Bausewine,* 354 Pa. 35, 41, 46 A. 2d 491, as follows: "The reasonable inference of guilt must be based on facts and conditions proved; it cannot rest solely on suspicion or surmise. These do not take the place of testimony. The facts and circumstances proved must, in order to warrant a conviction, be such as to establish the guilt of the defendant, not necessarily beyond a moral certainty, nor as being absolutely incompatible with his innocence, but at least beyond a reasonable doubt." See also *Com. v. Lowry,* 374 Pa. 594, 601, 98 A. 2d 733; *Com. v. Cese,* 176 Pa. Superior Ct. 650, 654, 655, 109 A. 2d 228.

From a reading of the record it is clear that the

lower court placed complete reliance on the case of *Com. v. Foulke,* 22 D. & C. 135. When the motion for the demurrer was made, the court stated: "It occurs to me that the demurrer ought to be sustained. It seems to me as though it is on all fours with this case." The lower court also clearly felt that the defendant was guilty but felt that the case of *Com. v. Foulke,* supra, controlled the matter. After the Commonwealth's officer had said that he felt "this man is guilty," the lower court said: "I might say I am morally of the belief of that myself but whether you are able to go to the jury, and if this man is convicted, how you could say that we or you have shown it beyond a reasonable doubt."

In *Com. v. Foulke,* supra, the defendant was tried upon three bills of indictment charging operating a motor vehicle while under the influence of intoxicating liquor, and charging failure to stop and render assistance at scene of automobile accident and charging turning off lights to avoid arrest. The jury returned verdicts of guilty on all indictments. Defendant filed motions for new trial and in arrest of judgment. The lower court set aside the verdict of the jury and discharged the defendant. In that case the lower court said, at page 138: "Upon these inferences, the jury must then superimpose the prima facie inference or presumption provided under The Vehicle Code, supra, that the defendant, as. the registered owner of such motor vehicle, was driving it at the time of the collision. The jury would thus be required to base a presumption upon an inference. The law, however, does not permit an inference to be drawn from an inference nor a presumption from a presumption: . . . ." This is no longer the law of Pennsylvania, if it ever was. It was clearly stated in *Neely v. Insurance Co.,* 322 Pa. 417, 185 A.

784, that an inference may properly be based upon an inference and more than one inference may be drawn from a primary and established fact. See also to the same effect *Jackson v. U. S. Pipe Line Co.*, 325 Pa. 436, 438, 191 A. 165; *Madden v. Great A. & P. Tea Co.*, 106 Pa. Superior Ct. 474, 480, 481, 162 A. 687; *Del Gaizo Dist. Corp. v. Gallagher*, 127 Pa. Superior Ct. 53, 61, 62, 63, 192 A. 144.

It never was very good law that you could not have an inference upon an inference. See Wigmore on Evidence, 3d ed., Vol. 1, §41: "It was once suggested that an 'inference upon an inference' will not be permitted, i.e. that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several Courts, and sometimes actually enforced.

"There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no Court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.

"The fallacy has been frequently repudiated in judicial opinions."

Among the many cases cited in the footnote by Professor Wigmore to repudiate the fallacy are the above cited Pennsylvania cases. Many sister states have punctured this fallacy but we will quote from one only. In *Philips v. Travelers' Ins. Co.*, 288 Mo. 175, 231 S.W. 947, the lower court stated that it could not be inferred that a bruise had been received from an accidental fall and thence to the fall as the cause of death. The appellate court commented: "Doubtless, the very next time that the judge who wrote the opinion is ill and sends for a physician, the physician will build inference on inference on inference from symptoms, and will then prescribe belladonna, or strychnia or any other potent drug on the faith of such inferences, and the judge will rise up cured and return to his bench muttering, 'No inference upon an inference, mind!' "

It is our opinion that the lower court should have refused the motion for a demurrer. The defendant then could have elected either (1) to take the stand and testify that he was not operating the vehicle at the time of the alleged violation and to submit himself to an examination as to who at that time was operating the motor vehicle, and reveal the name of the person, if known to him, or (2) remain silent. If he chose to testify, then the prima facie evidence arising from the registration plate would have been overcome and removed and the burden would have been shifted back to the Commonwealth to prove who was the operator. Act of May 1, 1929, P. L. 905, Art. XII, §1209, as amended, 75 PS §739. If the defendant had failed to take the stand and so testify the presumption that he was the driver of the car at the time of the alleged violation

of The Vehicle Code would have remained in the case as evidence to be considered by the jury. The presumption with which we are here dealing is a true, legal presumption as described by Wigmore and also by Justice (later Chief Justice) MAXEY in *Neely v. Insurance Co.,* supra, at pages 425, 426 and 427: "It is an instrument of proof in the sense that it determines from whom evidence shall come." If defendant had taken the stand and denied being the driver and then revealed the name and address of the real driver the court, under The Vehicle Code, would have been obliged to discharge him. This, of course, is based upon the assumption that the Commonwealth could not produce any other evidence to prove that the defendant was the real driver. Then, however, the Commonwealth would have been able to institute a new criminal action directed at the person thus revealed to be the real driver.

The order of the lower court is reversed with a venire.

---

DISSENTING OPINION BY WRIGHT, J.:

I respectfully dissent. The defendant would not have to elect either (1) to testify that he was not operating the car at the time of the collision, or (2) remain silent. His position might, and probably would, be that his car was not involved in the collision at all. I particularly question what I consider to be the fundamentally erroneous statement in the majority opinion that, if the defendant chose to testify, "the burden would have shifted back to the Commonwealth to prove who was the operator". The burden is upon the Commonwealth throughout the entire trial to prove the defendant's guilt beyond a reasonable doubt, and that burden never shifts from the Commonwealth. The only effect of Section 1209 of the Vehicle Code, assuming

that it applies in this case, is to make "the registration plate displayed" prima facie evidence.

It is my view that Judge TAXIS used good sound common sense in concluding that the evidence was insufficient to warrant a conviction. I would affirm upon the following excerpt from his well considered opinion:

"A jury could not without conjecture or surmise reach the conclusion that (1) Bolger's car was the vehicle involved in the accident on October 2, 1955, and (2) that Bolger was the driver of that car without entertaining a reasonable doubt as to one or both of these essential factors. A single piece of chrome is the only substantial link establishing any connection between Bolger's car and the accident and this piece of chrome was not discovered until three days after the accident occurred. Bolger's car was damaged on both sides, indicating that the vehicle had been involved in at least one accident other than the alleged occasion on October 2, 1955; and the possibility cannot be overlooked that the piece of chrome might well have been torn from the defendant's car on this other occasion. Furthermore, at a still later undetermined date, several additional pieces of chrome were found at the scene of the accident. Some of these pieces of chrome appeared to fit, others did not. The non-fitting pieces of chrome clearly did not come from either Bodnar's or the defendant's car, giving rise to the possibility that the culprit in this case was the driver of the vehicle shorn of these non-fitting pieces of chrome, and not the defendant. Added to this thin skein of evidence is the sole fact that the damaged car is registered in the name of the defendant. Note also that the registration number of defendant's car was not obtained by Bodnar at the scene of the accident, but at a much

later date, giving rise to the serious question whether the presumption of owner-operation of Section 1209 of the Motor Vehicle Code has any application in this case.

"It is apparent that a conviction based on these sketchy facts could only be the result of conjecture, suspicion and surmise. Standing against the presumption of innocence the circumstances proved were not sufficient to exclude reasonable doubt as to the guilt of the accused. Should the case have gone to a jury and a conviction resulted, we would have been compelled to set the verdict aside as not being supported by the evidence".

GUNTHER, J., joins in this dissent.