## Commonwealth *v.* Hall, Appellant.

*Criminal law—Quashing indictment—Exceptions—Appeals.*

An exception lies to the denial of a motion to quash an indictment.

A prisoner's motion to quash and an assignment of error to the refusal of the court to quash an indictment is regular and proper practice.

*Criminal law—Indictment—Duplicity—Forgery.*

In criminal pleading, as a general rule, two or more offenses, distinct and unconnected, should be charged in separate counts, and if they are charged in a single count, such count is bad for duplicity; on the other hand when two or more offenses arise from a single act or transaction, or are closely related, they may be joined in one count.

Where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a phase in the same offense, the different acts may be coupled in one count. It is not regarded as duplicity thus to join successive statutory phases of the same offense.

An indictment charging that the prisoner did " unlawfully, falsely and fraudulently make, utter and publish and cause to be made, uttered and published a certain written instrument . . . . commonly known as a note, for the payment of money," is not bad for duplicity.

*Criminal law—Forgery—Promissory note—Charge of court.*

On the trial of an indictment for making, uttering and publishing a promissory note, an instruction that if the defendant brought suit on the forged note, he was uttering the note and could be convicted therefor, is erroneous, inasmuch as it ignores the question whether the defendant forged the note, or knew that it was forged. An instruction also which charges that if the jury finds that the note was forged the prisoner could be convicted, is bad, as it ignores the question as to whether the defendant had forged the note, or caused it to be forged, or had uttered or published it knowing that it was a forged note.

*Criminal law—Forgery—Promissory note—Statute of limitations.*

Upon an indictment charging the defendant with forging, uttering and publishing in a single count, it is error to charge the jury that the prisoner could be convicted in manner and form as he stood indicted, regardless of when the note was made, and who made it, and regardless of whether if the defendant did not make it, or cause it to be made, he knew that it was a forged note.

In such a case the jury should have been instructed to determine from the evidence whether or not the defendant forged the note. If he did and the crime was not barred by the statute of limitations he might have been convicted of forgery. If the jury could not find from the evidence beyond a reasonable doubt, that the defendant forged the note or caused it to be forged, then they should have been instructed to inquire whether or not he knew that it was a forged note, and if he did and uttered it within the statutory period, then he might have been convicted of uttering the note.

Argued March 9, 1903.    Appeal, No. 20, Feb. T., 1903, by defendant, from judgment of Q. S. Tioga Co., Sept. T., 1902, No. 4, on verdict of guilty in case of Commonwealth v. John M. Hall.    Before BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ.    Reversed.

Indictment for forgery.    Before NILES P. J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* among others were (1) in refusing to quash the indictment ; (13–17) portions of charge, quoted in the opinion of the Superior Court.

*David Cameron*, with him *J. W. Mather*, for appellant.

*S. F. Channell*, with him *F. H. Rockwell*, district attorney, *F. E. Watrous*, and *H. F. Marsh*, for appellee.

OPINION BY MORRISON, J., May 22, 1903 :

By section 169 of the Penal Code of March 31, 1860, Purdon (12th ed.), p. 506, it is made a misdemeanor for any person to "fraudulently make, sign, alter, utter or publish or be concerned in the fraudulent making, signing, altering, uttering or publishing of any written instrument, other than notes, bills, checks

or drafts already mentioned, to the prejudice of another's right with intent to defraud any person or body corporate, or fraudulently cause or procure the same to be done."

In the present case the indictment charges the defendant in a single count as follows: "That John M. Hall, late of said county, on the 13th day of November, A. D. 1901, at the county aforesaid, and within the jurisdiction of this court, with force and arms, etc., unlawfully, falsely and fraudulently did make, utter and publish and cause to be made, uttered and published a certain written instrument, purporting to be made by one John Benson, Jr., commonly known as a note for the payment of money to the said John M. Hall, of which the following is a copy: " then follows a copy of the note, and the indictment closes in proper form. The appellant contends that the indictment is bad for duplicity, in charging, in a single count, three separate and distinct offenses, viz: (1) forgery of the writing; (2) uttering and publishing the forged writing; (3) causing it to be made, uttered and published; and the first specification of error is to the refusal of the court below to quash the indictment on this ground.

There is some diversity of judicial opinion in some jurisdictions as to whether an exception lies to the denial of a motion to quash an indictment. But we think this question may be regarded as settled in Pennsylvania. In Commonwealth v. Church, 1 Pa. 105, the Supreme Court sustained an exception and reversed the order of the court below in quashing an indictment. In Commonwealth v. Bradney et al., 126 Pa. 199, it was held that a proceeding to quash the indictment is to be considered as a part of the trial, and that an indictment may be quashed for matters not appearing upon the face of the record. In Kilrow v. The Commonwealth, 89 Pa. 480, it was held that duplicity is not ground for arrest of judgment, but that the question ought to have been raised by motion, or by demurrer. In Hutchison and another v. Commonwealth, 82 Pa. 472, assignments of error to the refusal of the court to quash were sustained by the Supreme Court. In Brown v. Commonwealth, 73 Pa. 321, an assignment of error was sustained for the refusal to quash an indictment. We, therefore, think it may be considered as settled that the defendant's motion to quash and his assignment of error to the refusal of the court

to quash the indictment is regular and proper practice. See also Com. v. New Bethlehem, 15 Pa. Superior Ct. 158.

This brings us to the question of whether the indictment is bad for duplicity and ought to have been quashed. It must be conceded that in criminal pleading, as a general rule, two or more offenses, distinct and unconnected, should be charged in separate counts, and if they are charged in a single count, such count is bad for duplicity. It must also be conceded that when two or more offenses arise from a single act or transaction, or are closely related, they may be joined in one count. An early case in this state on this question is Commonwealth v. Rogers et al., 1 S. & R. 124. In that case the indictment charged that the defendants " on the 13th day of April, 1810, at, etc., in, etc., and within, etc., with force and arms, and with a strong hand, into a certain messuage and ten acres of arable land, situated in the township of Rye, in the county of Cumberland, of which Moses Kirkpatrick was then and there possessed, for a certain term of years, then, and still to come, and unexpired, unlawfully did enter, and the said Moses Kirkpatrick from the peaceable possession of the said messuage, then and there, with force and arms, and with a strong hand, unlawfully did expel and put out, and the said Moses Kirkpatrick from the possession thereof, so as aforesaid, with force and arms, and with a strong hand, being unlawfully expelled and put out, the said defendants him, the said Moses Kirkpatrick, from the aforesaid 13th day of April, 1810, until the day of taking this inquisition, from the possession of the said messuage and ten acres of arable land, with force and arms, and with a strong hand, unlawfully and injuriously then and there did keep, and still do keep out, to the great damage of the said Moses Kirkpatrick," etc. The jury found all the defendants not guilty of forcible entry, but that two of them were guilty of the forcible detainer. There was a motion in arrest of judgment on the ground that the separate parts of the indictment were repugnant to each other. The judgment was arrested by the court below, and the record of the proceedings was removed to the Supreme Court by writ of error. Chief Justice TILGHMAN and YATES, J., both wrote opinions in that case, and it was distinctly held that, " a forcible entry, and a forcible detainer, are distinct offenses, and although both are charged in the same indictment, the defend-

ants may be acquitted of one, and convicted of the other."
In Commonwealth v. Miller et al., 107 Pa. 276, the indictment
was in one count, and before plea entered or jury sworn, defend-
ants' counsel moved to quash on the ground that the crimes of
forcible entry and forcible detainer are distinct and separate
offenses under the criminal code, and different in the penalties
attached, and they cannot be joined in the same count in the in-
dictment, as has been done in this case." This motion was over-
ruled by the court and the defendants ordered to plead. The
court below said : " The 21st and 22d sections of the act of 1860,
separate the old common law offense of forcible entry and de-
tainer, and make two distinct offenses : the one count in the bill
unites them ; this is duplicity, and judgment is arrested." To
this ruling the commonwealth took a writ of error and assigned
this action of the court. Mr. Justice CLARK delivered the opin-
ion of the court, October 20, 1884, and said : " If there be duplic-
ity in the indictment, the defendants may take advantage of the
defect by motion in arrest of judgment ; if they had voluntarily
entered their plea and put themselves upon trial, they could
not now, perhaps, relieve themselves from the consequences of
an adverse verdict in this form ; but they sought to avail them-
selves of this alleged defect at every stage of the case, and after
verdict they were without doubt entitled to have the judgment
arrested—if the indictment was bad for the reasons stated."

Several distinct misdemeanors may be charged in the different
counts of the same indictment, but an indictment which charges
distinct and separate offenses in a single count, is generally
bad for duplicity, and upon proper application will be quashed ;
the grand jury should be allowed to pass upon the charges sep-
arately : Hutchison v. Commonwealth, 82 Pa. 472 ; Kilrow
v. Commonwealth, 89 Pa. 480 ; Fulmer v. Commonwealth,
97 Pa. 503.

It is contended that forcible entry and forcible detainer are
distinct offenses, and that as they are coupled in a single count,
the indictment is bad. It must be conceded, of course, that
under the 21st and 22d sections of the Crimes Act these of-
fenses are, in the abstract, distinct and separate ; the provi-
sions of the statute are plain, and it is unnecessary by any proper
definition of each to draw the distinction between them. But
this distinction was as clearly defined before the act of 1860 as

since.   An indictment for forcible entry was sustainable at
common law, by the statute of 15 Rich. 11, remedy was given
against forcible entries and detainers, but it was by the stat-
ute of 8 Henry 6, c. 9, that forcible detainers after a peaceful
entry was declared to be a distinctive offense, whilst restitu-
tion of possession was rendered pursuant to the act of 21 Jac.
1, c. 15.   These statutes were held to be in force in Pennsyl-
vania, and prosecutions for forcible entry and detainer were
generally brought in pursuance of their provisions and of our
own statute of 1700 : 1 Sm. L. 1.   This statute of 1700 and
the English statutes referred to, are supplied by the 21st and
22d sections of the act of 1860, which so far as concerns the
questions here involved are but substantial re-enactments of
the statutes they supply : Commonwealth v. Toram, 2 P. L. J.
296." Justice CLARK then discusses the practice prior to the
act of 1860, and cites several authorities, among them Com-
monwealth v. Rogers, supra, and refers to the decision by Chief
Justice TILGHMAN therein, and then quotes : " But when a
statute makes two or more distinct acts connected with the
same transaction indictable, each one of which may be consid-
ered as representing a phase in the same offense, it has, in
many cases been ruled that they may be coupled in the one
count; thus, setting up a gaming table, it has been said, may
be an entire offense ; keeping a gaming table and inducing
others to bet upon it may constitute a distinct offense, for either,
unconnected with the other, an indictment will lie ; yet when
both are perpetrated by the same person, at the same time, they
may be coupled in one count: " Wh. Cr. Pl. sec. 257.   Justice
CLARK then says : " It is not regarded as duplicity thus to
join successive statutory phases of the same offense.   So a man
may be indicted for the battery of two or more persons in the
same count, if it was all one transaction, or for the larceny of
several distinct articles belonging to different owners, if the
time and place of taking are the same: Fulmer v. Common-
wealth, 97 Pa. 503.   The indictment in this case sets forth the
entry and detainer as the beginning and ending of the same
transaction, occurring at the same time, at the same place, be-
tween the same parties and affecting the same subject-matter.
The entry and detainer are but part and parcel of one act or
transaction.   The offenses are of the same grade and kind, are

punishable alike, and to the same extent, and under the rules of criminal pleading and according to the established practice of our criminal courts, it was competent for the jury under the form of indictment to find the defendants guilty of both or either, as the proofs might appear. We are of opinion that this indictment is not bad for duplicity, and therefore the judgment of the quarter sessions is reversed."

It ought not to be overlooked that the Crimes Act of 1860 deals with the offense of forcible entry in section one and with forcible detainer in a separate and distinct section of the act.

In Commonwealth v. Bachop, 2 Pa. Superior Ct. 294, will be found a case where " the defendant was convicted upon an indictment in which it was charged (in a single count) that he did fraudulently make, sign, utter and publish and was then and there concerned in the fraudulently making, signing, uttering and publishing of a written instrument, to wit : a judgment note for the payment of money," etc. In that case the defendant was convicted and sentenced, and the case being removed to this court on appeal the judgment was affirmed. It is true that the question of duplicity was not specially raised in the court below or in this court, but it is of some significance that the case so far as the indictment is concerned is precisely like the one under consideration, and it was vigorously contested in the court below, and after argument in this court the judgment was affirmed. No one connected with the case seemed to have thought worth while to suggest that the indictment was bad in charging the fraudulent making, uttering and publishing of a note in a single count. In Commonwealth v. Mentzer, 162 Pa. 646, it is held, as stated in the syllabus, " Where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a phase in the same offense, the different acts may be coupled in one count. It is not regarded as duplicity thus to join successive statutory phases of the same offense."

(Page 648.) " The 65th section of the Act of March 31, 1860, clearly specifies four distinct and separate acts with reference to public money, which shall constitute the offense of embezzlement. . . . Each of these acts, therefore, though of very varying character and degree of moral turpitude, is of equal legal im-

port, and by itself constitutes the full statutory offense. Prima facie, therefore, each of such acts charged is a separate crime, and where such is the fact no two can be charged in the same count. . . . The four specified acts may therefore be four distinct and separate offenses, or they may be so entirely parts of the same transaction that they combine to make but one. Into which category they fall must depend on the facts of each case, and therefore must raise a question for the jury. That being so there is no legal difficulty in joining two or more such acts in one count."

Now if a person should fraudulently make, sign, alter, utter and publish a forged note at the same time and place, and as one transaction, it seems beyond question that it would be proper pleading to charge the offense in a single count, and on the trial the question would be for a jury as to whether or not the several acts did constitute a single offense, and if they did it might be a general verdict of guilty in manner and form as indicted. But if under the testimony it should appear that the defendant had fraudulently made or altered the instrument with intent to defraud any person, but that he was not concerned in the uttering or publishing the same, then it would be the duty of the court to control the matter by appropriate instructions to the jury. So also if it should appear on the trial that one person had forged the note and another, the defendant on trial for instance, had uttered it with the knowledge that it was a forgery, then the court could instruct the jury that the defendant could only be convicted, if at all, of the uttering. The view we take of this case is that it comes within the same class as the cases referred to in Commonwealth v. Miller, supra. It should be noticed that the indictment under consideration charges in a single count that John M. Hall on November 13, 1901, with force and arms, etc., unlawfully, falsely and fraudulently did make, utter and publish, and cause to be made, uttered and published a certain written instrument, etc. This charges it all as a single transaction by the same person and at the same time and place and under the authorities, supra, we are unable to see how the court could have quashed this indictment. The motion to quash was in effect a demurrer, and the facts averred in the indictment must at the time be taken as true. If it was true that the defendant

fraudulently made, uttered and published the note on November 13, then it was certainly a single transaction, which could be embraced in a single count. Section 11 of the Criminal Procedure Act of March 31, 1860, P. L. 427, is as follows: "Every indictment shall be deemed and adjudged sufficient and good in law, which charges the crime substantially in the language of the act of assembly prohibiting the crime, and prescribing the punishment, if any such there be, or, if at common law, so plainly that the nature of the offense charged may be easily understood by the jury." It cannot be seriously contended that the indictment in the present case does not comply with section 11 of the act of 1860. The first assignment of error is not sustained. See also Com. v. Kolb & Kolb, 13 Pa. Superior Ct. 347.

We find in the record a large number of assignments of error in regard to the admission of testimony which we do not think necessary to consider at this time for the reason that the judgment must be reversed upon the assignments of error based upon the charge of the court.

The thirteenth assignment is as follows: "The court erred in charging the jury as follows: If this note had been forged, he brought suit upon it and made a demand upon John Benson's representatives for payment, then he was just as guilty in our opinion as though he had gone to the bank and obtained the money upon it, because that was an uttering and a demand for payment of the note." Manifestly this instruction to the jury is error. It ignores the question of whether the defendant forged the note or knew it was forged. Now, he could not be convicted of forgery unless he fraudulently made or altered the note to the prejudice of the rights of another, neither could he be convicted of uttering the note unless the jury found from the evidence that he had either forged it or knew that it was a forged note. This assignment is sustained.

The fourteenth assignment is as follows: "Now, gentlemen of the jury, if you found that the note was a forgery, then we think there has been sufficient evidence given you to comply with the statute which makes it necessary for there to be an uttering and publishing of the note in order to secure a conviction. Now the great question for you to determine is, was that note a forgery? Because if it was not, and the common-

wealth have not satisfied you beyond a reasonable doubt that
it was, as a matter of course this defendant should not be con-
victed." This instruction to the jury is bad. They must have
understood from it that if the note was a forgery they would
be justified in finding the defendant guilty without finding
that he either forged the note or knew that it was forged.
This is not the law. Again, in the fifteenth assignment the
court told the jury that the important questions were, was it
the note and was it a forgery? Still failing to tell the jury
that they must find that the defendant had forged the note
or caused it to be forged, or had uttered or published it know-
ing that it was a forged note. Again, the sixteenth assign-
ment of error is open to the same criticism. The court directs
the jury to the question of the identity of the note, and then
says, was that the note? If it was, was it a forgery? Again
impressing upon the jury's minds, probably, that if the note
was found to be a forgery it was their duty to convict the
defendant no matter who the forger was. This assignment
must be sustained.

The seventeenth assignment is in regard to the statute of
limitations. The court said : " There is no question about the
statute of limitations in this case. If that note was a hundred
years old it would not have made any difference in this case.
When was that note uttered? And when was the demand made
upon the estate of John Benson? Was that within five years?
There is no contradiction about that."

Now, it is true that if the jury had upon proper testimony
and instructions from the court found that the note was a for-
gery, and that the defendant knew it, and then made demand
for its payment by bringing suit thereon within five years prior
to the finding of the indictment, he might have been convicted
of uttering the note, but the instructions given by the court
were entirely inadequate to protect the rights of the defend-
ant. Suppose it was a forged note, but that the defendant
did not know it and came honestly by the note and made de-
mand for its payment, it is absurd to say that he could be con-
victed of uttering the note on such a state of facts, and yet the
charge may have been so understood by the jury. The jury
should have been instructed to determine from the evidence
whether or not the defendant forged the note. If he did and the

crime was not barred by the statute of limitations he might have been convicted of forgery. If the jury could not find from the evidence beyond a reasonable doubt that the defendant forged the note or caused it to be forged, then they should have been instructed to inquire whether or not he knew that it was a forged note, and if he did and uttered it within the statutory period, then he might have been convicted of uttering the note. But upon an indictment charging the defendant with the forging, uttering and publishing in a single count, it was manifest error to charge the jury that he could be convicted in manner and form as he stood indicted, regardless of when the note was made and who made it, and regardless of whether if the defendant did not make it or cause it to be made, he knew that it was a forged note.

Upon the thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments of error the judgment of the court is reversed and a venire facias de novo awarded.

NOTE.—For concurring opinion of SMITH, J., see supra, p. 232.