Commonwealth *v.* Bradshaw, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

24

*Joseph Michael Smith,* for appellant.

*Rosalyn K. Robinson, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., December 22, 1975:

On February 16, 1973, appellant filed a motion to dismiss as "duplicitous" and "insufficiently specific" two indictments which charged him with feloniously manufacturing, delivering or possessing with intent to manufacture or deliver a narcotic drug, heroin.[1] The motion was denied. Appellant was tried before a judge sitting without a jury and convicted on both indictments. Post-trial motions in arrest of judgment and for new trial were subsequently denied by the court en banc, with one judge dissenting. Concurrent sentences of seven years probation were imposed on each indictment, from which appellant now appeals.

Appellant alleges four errors: (1) the trial court's failure to dismiss the indictments as duplicitous; (2) the lower court's refusal to compel disclosure of the informant's identity and whereabouts; (3) the use of prior convictions as impeachment evidence; and (4) the failure to admit the informant's statements into evidence.

The relevant facts may be summarized as follows: Willie Davis, a Philadelphia policeman who was the Commonwealth's only witness, testified that on June 26, 1972, he was assigned to investigate the illegal sale of narcotics in the area of Huntingdon and Sartain Streets. As he

---

1. The Uniform Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §13, *as amended* (35 P.S. §780-113(a)(30)).

patrolled the area in an unmarked car, he observed appellant sitting on a flight of stairs. At the time he saw appellant, Officer Davis was accompanied by a confidential informer Michael Richardson, an acquaintance of appellant. Davis and Richardson approached appellant in the car, and Davis said he would like to buy "two cops" (two packets of heroin). Appellant replied that he had sold his last, but that he would try to get some.

The policeman parked his car and followed appellant on foot; the informant remained in the car. Appellant placed a telephone call from a booth in a store. Thereafter, Officer Davis gave him $12. Appellant walked ahead of Davis, and gained entrance to a house on Sartain Street, where he remained about 30 seconds. When he returned, he carried a brown paper bag containing a bundle of glazed paper packets filled with white powder. He gave two of the packets to Davis. The informant did not witness this transaction because the car was not in a visual line with the scene of the sale.

Officer Davis subsequently took the two packets he had purchased to the narcotics laboratory, where chemical analysis indicated that they contained heroin. This transaction and chemical analysis provided the basis for the first indictment.

The second indictment was issued as the result of events which occurred on July 13 and July 14, 1972. Again, Officer Davis was the only witness on behalf of the Commonwealth. His testimony revealed that at approximately 9 p.m., on July 13, 1972, he met appellant at a bar located at 12th and Huntingdon Streets. The officer told appellant he would like to buy "a bundle" (25 packets of heroin), and that he would return the next day to make the purchase.

On July 14, as arranged, Officer Davis returned, accompanied by another undercover agent. Appellant and Davis went for a short walk, during which appellant asked for and received $90, the price of the bundle. Davis

then returned to the car and waited with the other officer. A short time later, appellant went to the car, sat in the back seat, and gave Davis 25 glazed paper packets (later analysis confirmed that at least seven of these contained heroin). Davis then informed appellant that he was a policeman and that appellant was under arrest. Appellant struggled to get away and a hostile crowd began to gather. The officers released appellant, but later obtained a body warrant, on which appellant was arrested.

At the close of the Commonwealth's case, appellant moved to dismiss both charges, contending that the Commonwealth should be required to disclose the informant's identity and whereabouts. The motion was denied.

Appellant's defense was specific denial. He testified that on June 26, 1973, Michael Richardson (the informer) and Officer Davis approached him in a car. Appellant had known Richardson, who got out of the car to talk with appellant, for some time prior to this incident. In response to Richardson's question, appellant answered that he did not know where any narcotics were available and that he was waiting to make a purchase himself. Richardson then returned to the car and drove off with the policeman.

Appellant also stated that his next contact with Officer Davis was on July 13, at which time the policeman requested a meeting the following day in order to purchase drugs. Appellant said he did not know where there were any available. On the 14th, appellant went to a bar with a friend and saw Richardson sitting there. Davis arrived a few minutes later. Appellant admitted talking with Richardson inside the bar and Davis outside, but denied selling heroin to Davis.

I

The first issue we must resolve is whether the lower court erred in refusing appellant's pre-trial motion to dismiss the indictments as duplicitous and unspecific. Both indictments contain only one count, and charge the

identical offense. Only the dates of the alleged offenses differ.

The indictments read:

"That, on or about ............, in Philadelphia County, ROBERT BRADSHAW ALSO KNOWN AS MELVIN JENKINS, JR., feloniously did manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance, to wit: a narcotic drug classified under Schedule I or II, to wit: heroin."

Appellant concedes that these indictments were drawn substantially in the terms of Section 13 of the Uniform Controlled Substance, Drug, Device and Cosmetic Act, which provides:

"(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

". . . .

"(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act. . . ." Act of April 14, 1972, P.L. 233, No. 64, §13, *as amended* (35 P.S. §780-113 (a) (30)).

Because the indictments were drawn in the language of the statute, they are sufficient in law. *See* the Act of March 31, 1860, P.L. 427, §11 (19 P.S. §261), which provides: "Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of the assembly prohibiting the crime. . . ."

Nonetheless, appellant contends that he was accused of three distinct crimes in a one-count indictment: (1) the manufacture of a controlled substance, (2) the delivery of a controlled substance, and (3) the possession with intent to manufacture or deliver a controlled substance. Appellant believes that joining these crimes in one count violates Pa. R. Crim. P. 219(b). We do not agree.

Rule 219 (b) provides: "Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *There shall be a separate count for each offense charged.*" (emphasis added).

Rule 219 (b) has been construed to require, *when one indictment charges violations of two or more statutes,* that those allegations must be made in separate counts. *Commonwealth v. Lee,* 454 Pa. 526, 312 A.2d 391 (1973). There is nothing in our case law, however, which requires separate counts where a violation of one section of one statute constitutes the alleged offense. Moreover, the Pennsylvania Supreme Court has recently stated that indictments must be read in a common-sense manner, and not in an overly technical sense. *Commonwealth v. Pope,* 455 Pa. 384, 317 A.2d 887 (1974). To require grand juries to separate the offenses proscribed by one statute into separate counts is to require an "overly technical" act.

In the instant case, the indictments could not mislead the appellant at trial as they charged the offense in the language of the statute. The indictments were sufficiently drawn so that appellant could both anticipate the prosecution's proof and prepare his defense. Consequently, appellant was in no way prejudiced by the use of these one-count indictments. *See Commonwealth v. Pope, supra.*

## II

Appellant next alleges that the lower court committed reversible error by refusing to compel the Commonwealth to disclose the identity and whereabouts of the informant.

The leading cases, *Roviaro v. United States,* 353 U.S. 53 (1957), and *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967), note that each case which presents the question of the informer's identity must be decided on an

*ad hoc* basis. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." 427 Pa. at 59, 233 A.2d at 287, *quoting* 353 U.S. at 62.

The facts and circumstances of the instant case are such that no useful purpose would be served by forcing disclosure of the informant's identity and whereabouts. The appellant does not dispute that he knew the informant by name, and had known him for some time prior to the commission of this crime. The record also discloses that appellant attempted to contact the informant at his parents' home, but could not locate him there. Under these circumstances, appellant was in possession of the information he now requests and was not prejudiced by a lack of disclosure. *Churder v. United States,* 387 F.2d 825, 831 (8th Cir. 1968) ("The government in its brief here and during oral argument stated that the defendant 'well knew the name of the informer in this case,' because it was the man (Leonard Aron) who was with him on the motel parking lot. . . . If Aron was one of the informants and this fact was known to the defendant, the issue disappears.")

Balancing the public interest in protecting the flow of information about drug sales with the need of this appellant for disclosure of the informant's identity, as is required by *Commonwealth v. Carter, supra,* we conclude that the scales tip in favor of the public interest. It has long been the policy of our courts to protect the informant's identity from disclosure unless a defendant is able to "produc[e] evidence in support of his motion for disclosure." *Commonwealth v. Pritchett,* 225 Pa. Superior Ct. 401, 407, 312 A.2d 434, 438 (1973). A mere allegation that the informant's testimony might be helpful is not sufficient to compel disclosure. *Commonwealth v. Pritchett, supra.* This appellant has not produced evidence that the informant was present when the sales occurred. Even accepting appellant's version of the events as true, he has not shown that the informant would be able to

corroborate his defense of specific denial. By appellant's own testimony, the informant was not present at the second meeting with Officer Davis, and consequently could not corroborate the events which occurred at that time.

"Here the informant's participation was peripheral. He was not in a position to contradict or amplify any of the ... testimony on which [appellant's] conviction rests." *United States v. Brenneman*, 455 F.2d 809, 811 (3d Cir. 1972). This appellant has not shown that the informant would be a "valuable material witness for the defense." *Zaroogian v. United States*, 367 F.2d 959, 962 (1st Cir. 1966).

A case by case erosion of the policy of protecting informants from disclosure is not sound where the moving party has not shown a compelling need for so doing. This appellant has shown no need, and we find no error in the action of the lower court.

There is one further point concerning this issue which should be discussed. This appellant did not file a pre-trial motion for discovery of the informant's identity. Instead, he attempted to elicit that information from the Commonwealth's witness during trial. We believe that a pre-trial application for disclosure should be made under Pa.R.Crim.P. 310. Also, see the discussion in *Commonwealth v. Pritchett, supra*. Such a procedure would provide minimal delay during trial in situations which warrant the disclosure. Where a pre-trial motion for disclosure is not made, the issue is waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

### III

Appellant asserts that evidence of his prior convictions[2] was improperly used to impeach his credibility.

---

2. In 1966, appellant was convicted of burglary, larceny and receiving stolen goods. In 1967, he was convicted of the same offenses and also of conspiracy and the illegal use of narcotics.

Appellant relies on *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), as support for his contention. *Bighum* established a balancing test to replace the rule which allowed all prior felonies and misdemeanors to be admitted as impeachment evidence. However, appellant ignores this court's opinion in *Commonwealth v. Jackson,* 230 Pa. Superior Ct. 386, 326 A.2d 623 (1974),[3] which held that *Bighum* would apply prospectively only. Because appellant's trial occurred five months before the *Bighum* decision, there is no merit to his contention.

Appellant further contends that the lower court improperly refused to admit the informant's conversation with him into evidence under the *res gestae* exception to the hearsay rule. However, appellant did not show that the conversation met the tests of the *res gestae* exception, *i.e.,* a spontaneous exclamation made in response to a startling event, as set forth in *Commonwealth v. Gardner,* 282 Pa. 458, 128 A. 87 (1925). Therefore, we find no error by the lower court.

Judgment affirmed.

---

3. Allocatur was refused by the Supreme Court on June 6, 1975.

---

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

While I join in part I and part III of the majority opinion, I dissent from its discussion in part II.

It is clear that the government has a privilege to withhold the identity of persons who furnish information to law enforcement officials.[1] "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their

---

1. The privilege is a peculiar evidentiary privilege in that the evidence is withheld not only from the factfinder, but also from the defendant.

knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States,* 353 U. S. 53, 59 (1957). In other words, the obvious purpose of the privilege is to maintain the Government's channels of communication by shielding the identity of an informer from those who would have cause to resent his conduct.[2]

The scope of the privilege, however, is limited by its underlying purpose: "[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Roviaro v. United States,* supra at 60. "Once the defendant learns the state secret or the identity of the informer, the underlying basis for the privilege disappears. . . ." *Jencks v. United States,* 353 U.S. 657, 675 (1957) (Concurring opinion by BURTON, J.). See also *United States v. Brenneman,* 455 F.2d 809, 810 n. 1 (3d Cir. 1972) ; *United States v. Day,* 384 F.2d 464 (3d Cir. 1967)ı; Fed. R. Evid. 510 c(1) ; McCormick, Evidence §111 (2d ed. 1972) ; 76 A.L.R. 2d 262, §10.

In the instant case, the appellant is unaware of the present whereabouts of the informer. The appellant concedes, however, that he is cognizant of the informer's name, most recent address, and parents' address.[3] Because

---

2. Mr. Justice CLARK's dissent in *Roviaro* graphically describes the consequences of not upholding this privilege: "Enforcement is, therefore, most difficult without the use of 'stool pigeons' or informants. . . . To give them protection governments have always followed a policy of nondisclosure of their identities. Experience teaches that once this policy is relaxed—even though the informant be dead—its effectiveness is destroyed. Once an informant is known the drug traffickers are quick to retaliate. Dead men tell no tales. The old penalty of tongue removal, once visited upon the informer Larunda, has been found obsolete." *Roviaro v. United States,* supra at 66-67.

3. An important facet in preserving the anonymity of the informant is the informant's concern for the safety of his family.

the appellant possesses this information, the underlying rationale supporting the privilege is no longer applicable. The government, therefore, cannot assert that it is privileged to withhold relevant information. In essence, the issue of whether the government can assert its privilege disappears. *Churder v. United States,* 387 F.2d 825 (8th Cir. 1968). Upon proper request, therefore, the government must disclose pertinent information in its or its witnesses' possession. The government, however, need not produce the informant.[4] See *United States v. Super,* 492 F.2d 319 (2d Cir. 1974) ; *United States v. Sin Nagh Fong,* 490 F.2d 527 (9th Cir. 1974) ; *United States v. Ortega,* 471 F.2d 1350, 1358-1359 n.2 (2d Cir. 1972) ; *Wilson v. United States,* 409 F.2d 184 (9th Cir. 1969) ; *Clingan v. United States,* 400 F.2d 849 (5th Cir. 1968) ; *United States v. Cimino,* 321 F.2d 509 (2d Cir. 1963) ; *People v. Avila,* 253 Cal. App. 2d 308, 61 Cal. Rptr. 441 (1967). It is, therefore, unnecessary to determine whether

Disclosure of the informant's identity alone may imperil the informant's family. Once the identity of the informant is learned, therefore, the underlying basis of the privilege disappears.

4. Where the informer's name and whereabouts are known to the defendant, most courts will not go through this analysis. Rather, most courts take the view that the maneuvering for the identity of the informer in these circumstances cannot be supported on the basis of any legitimate need for the identity of the informer. *United States v. Day,* supra. Therefore, where the name and whereabouts of the informer are available to the defendant, most courts find no prejudice results when the government refuses to disclose the requested information. See, e.g., *United States v. Herbert,* 502 F. 2d 890 (10th Cir. 1974) ; *United States v. Weinberg,* 478 F. 2d 1351 (3d Cir. 1973) ; *United States v. Prada,* 451 F. 2d 1319 (2d Cir. 1971) ; *United States v. Escobedo,* 430 F. 2d 603 (7th' Cir. 1970) ; *Glass v. United States,* 371 F. 2d 418 (7th Cir. 1967) ; *Williams v. United States,* 273 F. 2d 781 (9th Cir. 1959) ; *Smith v. United States,* 273 F. 2d 462 (10th Cir. 1959). In the instant case, the appellant did not know the present whereabouts of the informer; hence he was not available to the appellant.

*Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967) controls the instant case.

Finally, the appellee contends that any error committed in not revealing the requested information was harmless. To be classified as harmless, the error must be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967) ; *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973) ; *Commonwealth v. Pearson*, 427 Pa. 45, 233 A.2d 552 (1967). I cannot speculate, however, whether the government had information on the whereabouts of the informer, whether the appellant would have been able to find him, or what the informer would have testified to at the trial. Under these circumstances, the error is not harmless beyond a reasonable doubt.

I would reverse and remand for a new trial.

———

CONCURRING AND DISSENTING OPINION BY CERCONE, J.:

I agree with Parts I and III of the majority opinion; however, I agree with the result reached by the Concurring and Dissenting Opinion of Judge SPAETH, in Part II, concerning the obligation of the Commonwealth to produce the name and whereabouts of an informant. In any event, I also believe that some refinement in the procedural aspect of this problem is necessary.

Rule 310 of the Pennsylvania Rules of Criminal Procedure[1] provides a vehicle for discovery by the defendant

———

1. "Rule 310. Pretrial Discovery and Inspection. All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. *No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons.* The order shall specify the time, place and manner

of the names and whereabouts of material witnesses. By requiring a hearing wherein the defendant may demonstrate his need to know the name and whereabouts of an informant, the rule establishes an appropriate forum "for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States*, 353 U.S. 53 (1957); *Commonwealth v. Carter*, 427 Pa. 53 (1967).

At the preliminary hearing appellant must have learned that Officer Davis' testimony concerning the alleged drug sales was going to be at variance with his own. There remained only one other witness, Richardson, the informant, who might resolve this conflict. Therefore, if Richardson's recollection of the events would corroborate appellant's, Richardson's whereabouts would be vital to the *preparation* of appellant's defense. Hence, one would expect that appellant's counsel would want to question Richardson prior to trial to ascertain the testimony he might provide. It is not severe, therefore, to require that the accused employ Rule 310 to discover the names and whereabouts of material witnesses, or waive the right to complain about their non-production thereafter.

Consider the alternative, especially in the context of a jury trial. Upon appellant's request for disclosure at trial, the court must recess and conduct a "hearing" on the question of whether the accused's need to know outweighs the public interest in protecting the flow of information. If the accused makes out such a case for himself, the trial must be interrupted and the jury held over while the accused seeks out the witness, determines whether to call him at trial and has him brought before

---

of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth." [Emphasis added.]

the court to testify. This disruptive and wasteful procedure is unnecessary in light of Rule 310; and, we should not countenance its use in the future.

I would reach the merits of the question in the instant case only because we have not heretofore suggested that the accused employ Rule 310 to discover the name and whereabouts of a material witness. However, henceforth such an application under Rule 310 must be made or the issue will be waived.

————

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

I agree with the majority's conclusion in Part I of its opinion that appellant's attack upon his indictment as duplicitous must fail. I reach that conclusion, however, by a different route than the majority. Part II of what follows, dealing with the Commonwealth's failure to disclose the whereabouts of an informer, is submitted as a dissent. I express no comment on Part III of the majority's opinion.

Appellant was arrested on August 19, 1972, and charged with feloniously manufacturing, delivering, or possessing with intent to manufacture or deliver, a controlled substance, heroin. Two indictments were returned, and on February 16, 1973, appellant filed a motion attacking the indictments as duplicitous, which was denied. The case proceeded at once to trial before a judge sitting without a jury, and appellant was found guilty on both indictments. Motions in arrest of judgment and for a new trial were filed, but the court *en banc* denied them, Judge BRADLEY dissenting. Appellant was sentenced to seven years probation on each indictment with the sentences to run concurrently, and this appeal followed.

Willie Davis, a Philadelphia police officer, was the only witness to testify for the Commonwealth. In regard to the first indictment, his testimony may be summarized as follows. On June 26, 1972, he was assigned to investi-

gate the illegal sale of narcotics in the area of Huntingdon and Sartain Streets in Philadelphia. He was patrolling that area in an unmarked car, accompanied by a confidential informer, when he observed appellant sitting on some steps. Davis had never before seen appellant, but he nevertheless exchanged a few words of greeting with him and told him he wanted to buy "two cops." Appellant allegedly replied that he had sold his last "cop" but was willing to go with Davis to try to get some. Davis parked his car and started to walk down the street with appellant; the informer remained in the car. At one point appellant entered a variety store and made a telephone call. Shortly thereafter Davis gave appellant twelve dollars, and appellant walked ahead, knocked on the door of a house, remained thirty seconds, and returned with a brown paper bag containing a bundle of glazed paper packets. He gave two of these packets to Davis. Later analysis showed that they contained heroin. On cross-examination, Davis stated that the informer did not speak to appellant. He also stated that the car was not in view when the drugs were delivered to him, even though he and appellant were at most half a block from the car.

In regard to the second indictment, Davis's testimony may be summarized as follows. On the evening of July 13, 1972, he met appellant and told him he wanted to buy a bundle. Since Davis did not have any money with him, they agreed to meet the next day. Davis returned to the neighborhood the next day, but this time with another plainclothes officer in the car. He met appellant, went for a walk with him, and eventually was told to return to the car, where the other officer was waiting. Appellant came to the car and gave Davis twenty-five glazed paper packets, at least seven of which later analysis showed contained heroin. Davis identified himself as a police officer and tried to arrest appellant. A struggle ensued, and a loud, hostile crowd began to gather. Rather than risk injuring appellant or some bystanders, the officers

decided not to arrest appellant immediately. He was later arrested on a body warrant.

At the close of the Commonwealth's case, appellant moved for dismissal of both charges "for lack of necessary witnesses", arguing that the Commonwealth should be required to disclose the identity and whereabouts of the informer. The motion was denied.

Appellant testified on his own behalf and gave an account quite different from that given by Davis. He stated that on June 26th, one Michael Richardson, obviously the confidential informer, drove up with Officer Davis; that he knew Richardson; and that Richardson got out of the car to speak with him. Appellant was permitted to relate his side of the conversation but not Richardson's. Appellant "said to him I didn't know where any narcotics was at that time; that I was waiting around myself because I use stuff and I was waiting to make a purchase myself," whereupon Richardson got back into the car with Davis and drove off. Appellant specifically denied ever walking away from the car with Davis. As to the second occasion: On July 13th, Davis spotted appellant, said he wanted to see him the next day, and asked if he knew where he could purchase "some stuff." Appellant said no. The next evening appellant went to a bar with a friend. Richardson was already in the bar, and Davis entered a few minutes later. He admitted speaking with Richardson inside the bar and with Davis outside the bar, but he denied ever selling any heroin to Davis.

I

The first question presented is whether the trial judge erred in denying appellant's pre-trial motion attacking the indictments as duplicitous. The two indictments are identical except for the date of the alleged offense. Each contains only one count:

That, on or about . . . . . . . . . . . . , in Philadelphia County, ROBERT BRADSHAW ALSO KNOWN AS

MELVIN JENKINS, JR., feloniously did manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance, to wit: a narcotic drug classified under Schedule I or II, to wit: heroin. Appellant concedes that these incidents were drawn precisely in the language of the statute,[1] but argues nevertheless that the statute creates three separate crimes, the manufacture of a controlled substance, the delivery of a controlled substance, and the possession with the intent to manufacture or to deliver a controlled substance, and that the joinder of these crimes in a single count makes an indictment duplicitous and insufficiently specific.

It has long been recognized that two or more distinct and unconnected offenses should be charged in separate counts, and that if charged in a single count, the indictment is duplicitous. *Commonwealth v. Morgan*, 174 Pa. Superior Ct. 586, 102 A.2d 194 (1954) ; *Commonwealth v. Hall*, 23 Pa. Superior Ct. 104 (1903). This requirement has served a dual purpose: it has alerted the defendant to the charges against which he must defend; and it has provided him with the protection of a verdict, whether of guilt or innocence, against a second prosecution. Only one verdict may be returned for each count of an indictment, and if a single count is not specific and charges more than one offense, it is impossible to determine whether the verdict was returned as to one, several, or all offenses, and in turn whether further prosecution on one of the charges is barred. *See Commonwealth v. Binns*, 54

---

1. Section 13 (a) of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §13 (a) (30), imd. effective, as amended Oct. 26, 1972, P.L. 1048, No. 263, §1, imd. effective, 35 P.S. §780-113 (a) (30), provides:

"(a) the following acts and the causing thereof within the Commonwealth are hereby prohibited:

"(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to deliver, a controlled substance by a person not registered under this act. . . ."

D & C 2d 106 (1972). Early in Pennsylvania common law, however, two exceptions to this general rule were recognized. Our courts allowed two or more separate offenses to be joined in a single count of an indictment if those offenses arose from a single act or transaction. *Commonwealth v. Miller,* 107 Pa. 276 (1884); *Commonwealth v. Sutton,* 171 Pa. Superior Ct. 105, 90 A.2d 264 (1952); *Commonwealth v. Doran,* 145 Pa. Superior Ct. 173, 20 A.2d 815 (1941). Also, when a statute made two or more distinct acts connected with the same transaction indictable and each act could be considered as representing a phase in the same offense, then our courts allowed each to be charged in a single count. Thus, in *Commonwealth v. Zeitler,* 79 Pa. Superior Ct. 81, 83 (1922), this court refused to quash an indictment as duplicitous when it charged that the defendant had

> "operated a motor vehicle upon a public highway and did unlawfully injure the person and property of another person [named], then and there a user of said highway, and that the said defendant did then and there unlawfully fail and neglect to stop the said motor vehicle which he, the defendant, was then and there operating, and did then and there unlawfully fail to render such assistance as was necessary, and did then and there unlawfully fail and neglect to give his name and address to the injured party."

The relevant statute in that case imposed the duty upon any operator of a motor vehicle who injured the person or property of any other user of the highway to "stop, and render such assistance as may be necessary, and ... upon request, [to] give his name and address to the injured party or his proper representative."[2] The defendant argued that the indictment charged three separate offenses under the statute, and therefore three counts were required. The court held, however, that the

---

2. Act of June 30, 1919, P.L. 675, §23.

acts charged all represented phases of the same offense, and therefore "under the rules of criminal pleading and the established practice of our courts," they could all be charged in one count. *Id.* at 83.

In *Commonwealth v. Cese,* 176 Pa. Superior Ct. 650, 109 A.2d 228 (1954), the defendant was arrested for violating the gambling laws. One of the statutes involved provided that "[w]hoever, either publicly or privately erects, sets up, opens, makes or draws any lottery . . . is guilty of a misdemeanor. . . ."[3] The indictment charged that the defendant did "erect and set up" and "open, make, or draw" a lottery. It was the defendant's contention that each of these acts constituted a separate offense and therefore could not be joined in one count. As in *Zeitler,* the court rejected this claim. It reasoned: "In this case it is clear that we have joined in one count successive phases of the same offense and for each distinct phase an indictment will lie. However, when the separate offenses are committed by the same person at the same time, as occurred in this case, the separate phases may be included in one count." *Id.* at 658, 109 A.2d at 231. *See also Commonwealth v. Miller, supra; Commonwealth v. Hall, supra.*

For the purposes of the present case, it would seem that *Zeitler* and *Cese* would be dispositive. Here, as in those cases, we are dealing with a statute that makes each phase of an offense a separate crime and with factual settings concerning only one transaction. Both *Zeitler* and *Cese,* however, were decided before the adoption of Rule 219 (b) of the Pennsylvania Rules of Criminal Procedure,[4] as were the other appellate decisions recognizing this exception to the general duplicity rule. Rule 219 (b) reads:

---

3. Act of June 24, 1939, P.L. 872, §607, 18 P.S. §4607.

4. This rule was adopted June 30, 1964, effective Jan. 1, 1965, amended and effective Feb. 15, 1974. The section with which this case is concerned was effective in 1965, and so it is applicable here.

42

> "Two or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *There shall be a separate count for each offense charged.*" [Emphasis added.]

In *Commonwealth v. Lee,* 454 Pa. 526, 312 A.2d 391 (1973), the Supreme Court said that this rule requires that " '[t]here shall be a separate count for each offense charged' even if the same act or transaction is the basis for the separate offenses. To allow count one in this case to serve as the basis for charging offenses under two separate statutes would . . . require that Rule 219(b) be ignored." *Id.* at 531, 312 A.2d at 394. Therefore, as of January 1, 1965, the common law exception that separate crimes may be joined in a single count if they arise from the same transaction ceased to be good law, at least when the offenses joined are based on separate statutes. The narrow issue presented in the present case is whether Rule 219(b) also suspended the common law exception dealing with offenses based on a single statute. I think not.

First, to require that each indictable act be listed in a separate count would be to require the grand jury to carve up a statute like the one involved here every time it wished to return an indictment under it. If the legislature wished to have its statutes carved up, it would presumably have done so itself. More specifically, it would not have said that "Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of the assembly prohibiting the crime. . . ." Act of March 31, 1860, P.L. 427, §11, 19 P.S. §261. *Cf., Commonwealth v. Lee, supra.*

Second, and more important, there would be little benefit to the defendant by making such a requirement.

The joinder of each offense in a single count will not create a danger of later prosecution on one of those offenses. It may be true that when they are so joined, one will not be able to tell of which act the defendant was found guilty. That, however, is of no consequence. In *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated,* 414 U.S. 808 (1973) *reh.,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969 (1974), the Pennsylvania Supreme Court in an exercise of its supervisory powers announced the rule that a prosecutor must bring all known charges arising from a single episode in a single proceeding.[5] *Accord,* 18 Pa. C.S. §110(1)(ii). Therefore, in a case like the present one, a second prosecution could not be brought under the same statute, no matter what charges appellant was convicted of at the first trial. It would therefore not matter whether the charges were all listed in one count or separated into three counts.

Finally, any notice problem inherent in joinder can be alleviated by a motion for a bill of particulars. *See* Pa. R. Crim. P. 221. In *Commonwealth v. Simione,* 447 Pa. 473, 291 A.2d 764 (1972), the indictment alleged that the defendant "did possess, control, deal in, dispense, sell, deliver, distribute, or traffic in a narcotic drug: to wit: hashish." The defendant moved for and obtained a bill of particulars, which specifically set forth that he was "charged with the sale of hashish." In reviewing the sufficiency of the evidence, the Supreme Court recognized that the "Commonwealth is restricted to proving what it

---

5. Mr. Justice EAGEN, joined by Mr. Chief Justice JONES, in his concurring opinion in the original *Campana* decision stated that he would adopt the same rule as the majority with a significant exception, namely, that a second prosecution may be instituted if the purpose of the second crime is to prevent a "substantially different harm or evil." *Id.* at 259, 304 A.2d at 452. This exception is not applicable to the present discussion, however, since only a single statute is involved. Mr. Justice POMEROY dissented from both decisions.

has set forth in the bill," *id.* at 477, 291 A.2d at 766, and held that for the conviction to stand, the evidence had to be sufficient to establish that the defendant sold hashish.

Rule 219 (b), therefore, does not suspend the common law rule that when a single statute makes two or more distinct acts indictable, they may be joined in a single count if each act may be considered as a phase in the same offense and if each is connected with the same transaction. *Accord, Commonwealth v. Binns, supra.* Appellant was therefore properly brought to trial on the indictments returned against him.

## II

Appellant also contends that the trial judge committed several reversible errors during the course of his trial. Specifically, he contends that the judge erred in refusing to require disclosure of the whereabouts of the Commonwealth's confidential informer, in permitting the introduction of appellant's criminal record, and in refusing to allow appellant to testify what the confidential informer said to him. The majority is of the opinion that the refusal to require disclosure of the informant's whereabouts was not reversible. I must disagree.

The leading cases are *Roviaro v. United States,* 353 U.S. 53 (1957) and *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). In *Roviaro,* the petitioner was convicted of selling heroin to one "John Doe" and transporting it knowing it to be unlawfully imported. Before and during the trial he sought to learn Doe's identity, but the trial judge refused to compel the government to disclose Doe's identity because Doe was a police informer. On certiorari, the United States Supreme Court reversed. In so doing, it first recognized that in certain cases the government has a privilege to withhold from the defense the identity of police informers. The reason for this rule is that all citizens have an obligation "to communicate their knowledge of the commission of crimes to law-en-

forcement officials," and "preserving their anonymity, encourages them to perform their obligation." *Id.* at 59. The Court, however, proceeded to say that this privilege does not have an unlimited scope; rather its applicability depends on the particular circumstances of the case. It then held that in the case before it, the Government's informer had played such an important part in the alleged criminal act that it was error for the trial judge to permit the Government to withhold his identity. In *Carter*, an informer introduced an undercover agent to the defendant and an alleged illegal drug sale took place in the informer's presence. Another agent watched the sale from half a block away. The agents' identifications of the defendant at trial were based solely on the single meeting. The defendant raised a mistaken identity defense at trial and asked the trial judge to require that the name and address of the informer be disclosed. The judge refused. Relying on *Roviaro*, our Supreme Court held that disclosure should have been required: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the government withholds the information, dismiss the action. . . ." *Id.* at 59, 233 A.2d at 287, quoting *Roviaro v. United States, supra* at 60-61.

In *Roviaro* and *Carter*, the informer was an eyewitness to the specific criminal transaction. Here, the Commonwealth argues, disclosure was not required because the informer was not an eyewitness. This argument, however, misconstrues the holdings in *Roviaro* and *Carter*. In fact, to direct one's attention to the question of whether the informer was an eyewitness to the crime will in many cases be to misdirect the inquiry. In *Carter*, the defendant claimed mistaken identity. Therefore, the fact that the informer had witnessed the transaction was important.

That did not, however, make it essential. In *Common-wealth v. Pritchett*, 225 Pa. Superior Ct. 401, 312 A.2d 434 (1973), the defendant intended to raise an entrapment defense. Accordingly, we said that the crucial inquiry was not whether the informer had witnessed the sale of the drugs, but whether he could provide testimony that would be relevant to the activities or negotiations that preceded the sale. *See also Lopez-Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968) ; *Gilmore v. United States*, 256 F.2d 565 (5th Cir. 1958). Thus it is not a *sine qua non* to disclosure that the informer have witnessed the alleged crime. Instead, as was expressly stated in both *Roviaro* and *Carter*: "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Commonwealth v. Carter, supra* at 59, 233 A.2d at 287, quoting *Roviaro v. United States, supra* at 62.

In the present case, the defense was specific denial. To review the facts: Officer Davis testified in regard to the first transaction that he asked appellant to sell him some drugs, that appellant did not have any with him, but that at appellant's suggestion, they walked away from the car and appellant got some heroin and sold it to him. Davis admitted that the informer was in his car when he first spoke to appellant, but he testified that the informer took no part in the discussion and could not see him or appellant when the sale was made. Appellant admitted seeing Davis and the informer. He claimed, however, that he spoke with the informer and told him he did not have any narcotics to sell, and that then Davis and the in-

former drove away. He denied ever walking away from the car with Davis. Moreover, according to appellant, it would seem he never even spoke with Davis. The crucial question, therefore, is whose story should be credited.

*Carter* also turned on a question of credibility. There the Supreme Court said: "Elemental to our concept of fairness, as well as that embodied in the federal constitution, is the awareness that the testimonial perspective of police officers is conditioned by the 'often competitive enterprise of ferreting out crime.' *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369 (1948). This awareness makes us reluctant to permit the establishment of facts crucial to criminal guilt solely by police testimony based on a single observation *where testimony from a disinterested source is available.* Thus, while disclosure might not be necessary in a case where police evidence as to crucial facts was corroborated by neutral witnesses, we are unwilling to do so in a case like the instant one." *Id.* at 61-62, 233 A.2d at 288.

*United States ex rel. Drew v. Myers,* 327 F.2d 174 (3d Cir. 1964) is to the same effect. There, a police officer was walking in Philadelphia with an informer when they came across the defendant. The informer arranged a narcotics sale for the officer with defendant and walked about ten feet away. The trial judge refused to force disclosure of the identity of the informer. On appeal, the Third Circuit stated:

> "To engage in a semantic argument whether Irving [the informer] fits within the definition of an eyewitness is to provoke a needless discussion. Although Irving may have been unable to see the claimed passing of the tiny narcotics package between Drew [the defendant] and Harold [the police officer], a conclusion that he was unable to see Drew is untenable. Therefore, whether or not Irving was an eyewitness, what he saw—as it relates to the identity of the individual allegedly conducting the illegal transfer with

Harold—would appear to make him an essential witness. Calling him could have elicited relevant and material facts contributing to a determination of the truth.... Drew, it is clear, had the right 'to have all the facts connected with the [alleged illegal possession and sale of narcotics] ... fully and fairly disclosed by the prosecution....' " *Id.* at 179-80 (footnotes omitted).

Thus, it is clear that an informer's identity and whereabouts must be disclosed when he is the only disinterested witness who can explain, amplify, or controvert the testimony of police officers as to crucial facts. Here, the informer was just such a witness. Davis's and appellant's testimony cannot be reconciled. The informer either could have corroborated Davis's testimony that appellant agreed to make the sale, and walked away from the car with Davis to do so, or he could have corroborated appellant's testimony that he was unable to sell any drugs. I am therefore of the view that it was error for the trial judge to refuse to compel disclosure.[6]

The Commonwealth, and Judge PRICE in his opinion, submit that even so, the error was harmless because appellant admits he was aware of the informer's identity, specifically, that he was a man named Michael Richardson. This does not mean, however, that the nondisclosure was harmless. The very purpose of disclosure is to allow

---

6. Judge PRICE relies upon *United States v. Brenneman*, 455 F.2d 809 (3d Cir. 1972) and *Zaroogian v. United States*, 367 F.2d 959 (1st Cir. 1966) to support his view that disclosure should not be required. Both cases, in my judgment, are distinguishable from the facts here. In *Brenneman*, the defendant was implicated in a drug charge by the testimony of a co-conspirator who had no connection whatever with the informant. Disclosure was, therefore, " 'palpably not essential to the fair determination of this cause'." 455 F.2d at 811. In *Zaroogian*, the informant whose identity was sought had merely led a special agent of the Internal Revenue Service to a tavern where the agent then personally observed the defendant conducting a wagering business.

the defense to be able to call the person to the witness stand. In order to do this, counsel must know his whereabouts. In *Carter,* the court did not speak merely of identity, but rather of the "names and whereabouts" of the informer. *Commonwealth v. Carter, supra* at 60, 233 A.2d at 287. *Accord, People v. Diaz,* 174 Cal. 2d 799, 345 P. 2d 370 (1959). Here, appellant was in jail from arrest to trial. He knew the informer's name and his parents' address. Richardson, however, was not staying with his parents, and appellant did not know where he could be found. He was under the impression that Richardson had left Philadelphia and was living somewhere in New York City. Therefore, the Commonwealth should have been forced to disclose the whereabouts of Richardson, limited of course to the pertinent information in its or its witnesses' possession. To be classified as "harmless", the error must be harmless "beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18 (1966) ; *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973) ; *Commonwealth v. Pearson,* 427 Pa. 45, 233 A.2d 552 (1967). That cannot be said in the circumstances here.[7]

The only remaining question is whether the failure to disclose should lead to reversal of the convictions on both indictments. So far the discussion has concerned only the

---

7. Judge PRICE, relying on *Commonwealth v. Pritchett,* 225 Pa. Superior Ct. 401, 312 A.2d 434 (1973), argues that in any event the issue should be deemed waived because a pre-trial motion seeking disclosure was not made pursuant to Rule 310 of the Pennsylvania Rules of Criminal Procedure. All that *Pritchett* held, however, was that disclosure of an informant's identity might be so essential to a fair trial as to constitute "exceptional circumstances" justifying pre-trial discovery under Rule 310. We noted that it might be advisable in a particular case for a defendant to seek pre-trial disclosure. We did not, however, say that the defendant was *obliged* to seek disclosure pre-trial; indeed, we commented that "[t]here is some question whether Rule 310 applies to the disclosure of the names of potential witnesses at all." *Id.* at 410, 312 A.2d at 439.

first sale and the first indictment. According to Officer Davis's testimony, the informer was not present at all during the second transaction, which is the subject to the second indictment, and even according to appellant's testimony, the informer played a far more inconsequential part in this meeting than in the first one. There is a substantial question then whether the reasons proffered for reversal of the one conviction would also require reversal of the second conviction. The second conviction, however, need not be considered as an isolated occurrence. In *People v. Williams,* 51 Cal. 2d 355, 333 P.2d 19 (1958), the California Supreme Court was presented with an almost identical situation. There the defendant was convicted of selling narcotics on two separate occasions. The informer, though, was only present at the first. The court nevertheless reversed both convictions because the trial judge had refused to compel disclosure of the informer's identity. In regard to the second sale, the court held:

> "Although the informer did not witness the second transaction, it was consummated in reliance upon the prior one, and the theory of the prosecution, as sought to be established by the officer's testimony, was that the same person, allegedly defendant, committed the two offenses. If the informer had contradicted the officer's identification of defendant as to the first sale, this would have been highly material evidence to show that the officer was also mistaken in connecting defendant with the second transaction.

> "The failure to compel disclosure of the informer's identity resulted in a miscarriage of justice with respect to both counts." *Id.* at 360, 333 P.2d at 22.

This reasoning is both persuasive and applicable to the present case. Here, as in *Williams,* if the informer had contradicted the officer's testimony as to the first sale, the officer's testimony as to the second sale would also have been impugned.

I would therefore reverse the judgments of sentence and award a new trial.